## HERCULES POWDER CO. *v.* WILLIAMSON.*

(Division B.   Oct. 25, 1926.   Suggestion of Error Overruled Nov. 22, 1926.)

[110 So. 244.   No. 25814.]

1. EXPLOSIVES.
   Degree of care required by persons possessing and using dangerous explosives is of the highest.

2. MASTER AND SERVANT.
   Master using explosives must exercise highest degree of care to safeguard his servants, not only in conduct of his business, but in method or plan of carrying on business.

3. MASTER AND SERVANT.
   Doctrine of assumption of risks has no application to injuries to servant from explosives, because of master's failure to exercise proper degree of care.

4. MASTER AND SERVANT.
   Evidence as to whether system adopted by employer for blasting stumps was unnecessarily dangerous *held* for jury.

5. MASTER AND SERVANT.
   Establishment of facts from which one sensible, impartial person would infer proper care had been used in blasting stumps, and other person would disagree, raises issue for jury.

6. PLEADING.
   Failure of declaration to properly charge case relied on by plaintiff cannot be taken advantage of for first time in supreme court; such defects under the statute of jeofails being cured by verdict and judgment.

7. MASTER AND SERVANT.
   Instruction, in action for injuries received when blasting stumps, that employer had absolute duty to conduct blasting so that employees could get out of reach of danger before explosions, *held* erroneous.

8. TRIAL.
   Instruction on issue of employer's liability for injuries to employee engaged in blasting stumps should have been confined to case

made by evidence to effect that employer's plan or system was unnecessarily dangerous.

*Corpus Juris-Cyc. References: Explosives, 25CJ, p. 185, n. 51; p. 192, n. 16; Master and Servant, 39CJ, p. 282, n. 87; p. 692, n. 6; p. 1124, n. 99; p. 1157, n. 18; p. 1220, n. 71; p. 1235, n. 82; Pleading, 31Cyc, p. 764, n. 13; Trial, 38Cyc, p. 1617, n. 34; As to care required of master in respect to explosives, see note in 10 L. R. A. (N. S.) 377; 11 R. C. L. 691; 6 R. C. L. Supp. 670.

Appeal from circuit court of Forrest county.
Hon. R. S. Hall, Judge.
Action by Lee Williamson against the Hercules Powder Company. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

*Hannah & Simrall, T. J. Wills* and *H. Cassedy Holden,* for appellant.

The appellee was hired and paid to bore holes in pine stumps, to put charges of dynamite in these holes with caps and fuses attached, to light the fuses and to blow these stumps out of the ground. In blowing these stumps out of the ground they would burst to pieces and chunks of wood would be hurled through the air for four, five or six hundred yards. This was the general method of conducting the operation. The law everywhere, Mississippi not excepted, is that the plaintiff assumed the risk of being struck by a piece of this flying wood. Certainly, he did not assume this risk of being struck by this piece of wood if it was due to the negligence of the master. There is no argument about this proposition. The error on the part of the trial court was in failing to distinguish between a dangerous operation and a negligent operation.

"The general rule that the servant assumes the risks ordinarily incident to his employment applies, although the work is of a peculiarly hazardous character. The dangerous nature of the service adds nothing to the liability of the master." 39 C. J., page 709, section 909.

Among other cases cited to support the above text is *Y. & M. V. R. R. Co.* v. *Hullum,* 119 Miss. 229, 80 So. 645.

All of the acts of negligence laid to the defendant by the plaintiff vanished except the complaint that the fuses were not long enough to permit the plaintiff to light the fuses and then get beyond the range of the flying stumps. In other words, the complaint is that the Hercules Powder Company in hiring the plaintiff to perform a dangerous piece of work should have provided him with absolute protection against its dangers. Such is not the law. 39 C. J. 740, sections 944-45.

If the contentions of the plaintiff had been the law, the Y. & M. Railroad Company would have been liable to Hullum because they employed him in a hazardous undertaking and if such had been the law, the Cumberland Telephone & Telegraph Company would have been liable in the case of *Cumberland Tel. & Tel. Co.* v. *Cosnahan,* 105 Miss. 615, 62 So. 824.

We are not unmindful of what our court has had to say about the use of dynamite in *Evans* v. *Brown,* 106 So. 291; *McTighe, etc.,* v. *Johnson,* 114 Miss. 862, 75 So. 600; *Hamblin* v. *Gano,* 76 So. (Miss.), 633.

The case at bar falls squarely within the exceptions in *Evans* v. *Brown,* in that the plaintiff was engaged in the blasting work himself and the injury flowed from the very work in which he was engaged. If Lee Williamson is entitled to a judgment against the Hercules Powder Company in this case, then the Hercules Powder Company cannot carry on the business of blasting stumps and operating its machinery without becoming liable to every man who works for it. The use of dynamite and the operation of machinery is dangerous. Breaking a young mule to ride or plow is dangerous. If the Hercules Powder Company is liable to Lee Williamson because it hired him to engage in a dangerous piece of work, then by the same rule, every farmer would become liable when he hired a man to break his mule or to plow; and by the same rule of logic you could not employ a man to oper-

ate a locomotive or to drive an automobile without becoming liable for damages in case he was injured.

The case should be reversed and dismissed.

*H. Cassedy Holden,* also for appellant.

I.   The employee assumes the ordinary risks of the particular employment although such risks may be more hazardous in one occupation than in another.   *R. R. Co.* v. *Dees,* 121 Miss. 439, 83 So. 613.

We say that no negligence was shown on the part of the master toward the injured servant.   The evidence here goes no further than to show that the methods of blasting were extra-hazardous; but ''extra-hazardous methods'' are far from being ''negligent methods.'' There are many operations that are necessarily extra-hazardous and this fact does not increase or magnify the duty of the employer toward his employee engaged in such work.   Moreover, the plaintiff utterly failed to show that some other method of blasting was less dangerous and equally available to the defendant.

Another case which is even more in point is *Austin et al.* v. *R. R. Co.,* 134 Miss. 226, 98 So. 3.   See also 18 R. C. L., page 678, paragraph 168.   It was error for the court to grant the instructions for the plaintiff which appear in the record.   These instructions are absolutely contrary to the law as announced in the Dees and Austin cases cited above and other authorities pointed out and set forth in the briefs for the appellant.

II.   *Negligence of the Hercules Powder Company.*   As to the duty of the master to the servant employed in blasting operations, the court held in *Evans* v. *Brown,* 106 So. (Miss.), 281, that the servant assumes the risk of the great dangers involved in such operations when he enters the employment of the master with the full knowledge of the extra-hazardous nature of the work, provided always the master is not negligent.

In this case the plaintiff charged that the master was negligent; but the evidence adduced by the plaintiff failed to sustain any of these charges of negligence. This evidence showed that there was no negligence in failing to furnish fuses of sufficient length; or in causing the stumps to be overcharged with dynamite; or in increasing the charge of dynamite without notice to the plaintiff; or in requiring that about one hundred stumps be charged with dynamite; or in failing to supply "good" dynamite and standard materials for use in the blasting; or in failing to supply the proper tools and appliances for the work. The plaintiff's declaration made a number of charges of negligence and then the plaintiff's evidence absolutely and utterly failed to sustain these charges.

The plaintiff having thus completely failed to sustain the cause of action set up in the declaration, finally took the ultimate position that the law required the defendant to so conduct and carry on its blasting operations as to provide and guarantee absolute safety to its employees engaged in such operations. But this is not the law. To the contrary, this theory and position of the plaintiff as to the duty of the defendant is diametrically opposed to all law and precedent applicable to such cases.

One employed to charge and explode stumps with dynamite is bound to know that there will be danger to him from flying fragments. It is not an extraordinary risk of the employment, it is an ordinary risk of that particular employment. Under the doctrine that the employee assumes the ordinary risk of his employment, one who engages in the work of blasting assumes the ordinary risks of such employment, among which is the danger of flying particles or pieces cast up by such explosions. *Brotzki* v. *Wisconsin Granite Co.* (Wis.), 125 N. W. 916; *King* v. *Morgan,* 49 C. C. A. 507, 109 Fed. 446; *Browne* v. *King,* 4 C. C. A. 445, 100 Fed. 565; *Hutchinson* v. *Parker & Co.,* 57 N. Y. Sup. 158; *Nordstrom* v. *R. R. Co.* (Wash.), 104 Pa. 809; *Smith* v. *Oxford Iron Co.*

36 Am. R. (N. J.), 535; *Falls* v. *Pine Mt. Granite Co.,* 97 S. E. (Ga.), 114.

The following additional authorities are submitted on the proposition that it is the general rule, constantly reiterated and applied by the courts that the master cannot be charged with a breach of the duties owed to his servants simply on the ground that a safer method or a safer instrumentality than that from which the injury resulted was available and might have been adopted by him. See *Chrismer* v. *Bell Tel. Co.,* 6 L. R. A. (N. S.) 492 and note; *Dynen* v. *Leach,* 26 L. J. Exch. (N. S.) 221; *Medley* v. *American Car & Foundry Co.,* 140 Ill. App. 284; *Ventriss* v. *Pana Coal Co.,* 155 Ill. App. 152; *Parlett* v. *Dunn,* 46 S. E. (Va.), 467; *Northern C. R. R. Co.* v. *Husson,* 47 Am. Rep. (Pa.), 690; *Glover* v. *Meinrath,* 34 S. W. (Mo.), 72; *Muirhead* v. *Hannibal & St. John R. R. Co.* (1988), 31 Mo. App. 578 (former appeal, 1885, 19 Mo. App. 534); *Young* v. *Va. & N. C. Constr. Co.* (1891), 109 N. C. 618, 14 S. E. 58; *Innes* v. *Milwaukee* (1898), 96 Wis. 170, 70 N. W. 1064; *Chicago & G. W. R. R. Co.* v. *Armstrong* (1895), 62 Ill. App. 228; *Chicago, R. I. & P. R. R. Co.* v. *Lonegan* (1886), 119 Ill. 41, 7 N. E. 55; *Rush* v. *Missouri P. R. R. Co.* (1887), 36 Kan. 129, 12 Pac. 582; *East St. Louis Ice & Cold Storage Co.* v. *Sculley* (1895), 63 Ill. App. 147.

And the appellant submits the following additional authorities on the proposition that the servant assumes the risk of injury, not only from the perils ordinarily existing because of the particular means or method used by the master in conduct of his business. *Laverty* v. *Hambrick* (1907), 61 W. Va. 687, 57 S. E. 240; *Burnham* v. *Concord & M. R. R. Co.* (1896), 68 N. H. 567, 44 Atl. 750; *Hayden* v. *Smithville Mfg. Co.* (1861), 29 Conn. 548; *Rush* v. *Mo. P. R. R. Co.* (1887), 36 Kan. 129, 12 Pac. 582; *Simmons* v. *Chicago & T. R. R. Co.* (1884), 110 Ill. 340; *Richards* v. *Rough* (1884), 53 Mich. 212, 18 N. W. 785.

*Paul B. Johnson,* for appellee.

The court properly submitted the case to the jury for its determination on the question of negligence. The declaration shows and alleges that the appellant used dynamite in its business for the purpose of blasting stumps out of the ground, and that dynamite is a powerful and dangerous explosive, and that the appellant, therefore, owed the appellee the highest degree of care in such use of the same. It shows and alleges that it was negligence on the part of the appellant and dangerous to charge with dynamite a large number of stumps covering a small area of ground and to require six employees to light the fuses thereto attached at the same time, all working separately and abreast and that the appellant negligently required the work to be done in such dangerous manner.

That this was an appallingly dangerous manner of blasting the stumps is manifest. The appellant admits in its brief that the method of blasting stumps which it adopted and enforced was dangerous.

Is it possible under the laws of this country that a master who employs in his business the dangerous and deadly agency of dynamite may be permitted to adopt and enforce a method of using the same which would make it impossible for his employees to escape the danger, and then escape the liability for the injury or death of an employee caused by the inescapable danger created by an incident to such dangerous method of the use of such dangerous and deadly agency? The law imposes upon the master the duty of adopting a reasonably safe method of doing the work. "Methods of Work," 39 C. J., paragraph 567.

It is perfectly manifest that the very system adopted by the appellant rendered the place in which it required the appellee and its other servants to work dangerous. And not only this but it held them, if they obeyed its orders, in a place of danger until, as is admitted by the

appellant in its brief, "they could not possibly get beyond the range of the pieces of flying stumps." *Jobe* v. *Spokane Gas & Fuel Co.,* 73 Wash. 1, is directly in point; so likewise are *Ball* v. *Megrath,* 43 Wash. 107; *Blair* v. *Spokane,* 66 Wash. 399; *Etheridge* v. *Gordan Construction Co.,* 66 Wash. 256; *Rogers* v. *Walker,* 72, 579; 1 Labatt, Master & Servant, paragraph 118.

There was testimony taken in this case, brought into the record by the appellant itself, which is undisputed and which proves that the appellant could and actually did adopt a practical, workable and reasonably safe method of blasting its stumps, after the appellee and many others had been injured and killed under its old inherently negligent and dangerous method and also which proves that not a single injury or death had since occurred so far as the witness knew, and the truth is that under the new method there are very few serious injuries.

In *McTighe* v. *Johnson,* 75 So. 600, it was held that: "Road construction contractors are required to exercise the highest degree of care and caution to prevent leaving dynamite in a vacant hole where children might come in contact with it." See also 11 R. C. L. 662; *Hamblin* v. *Gano,* 76 So. at 633; *Evans* v. *Brown,* 106 So. at 281; *Rush* v. *Spokane, etc., R. R. Co.,* 23 Wash. 501; *Alton Lime & Cement Co.* v. *Calvey,* 47 Ill. App. 343. *Evans* v. *Brown,* 106 So. 281, decided by the supreme court of Mississippi on December 14, 1925, is a full, complete and decisive answer to Mr. Holden's whole contention on the assumption of risk.

A variance which the appellant mentions is that the declaration alleges that the fuses were only eighteen inches long. But as we recall the allegations of the declaration, it alleges that the fuses were too short, so short, that they would burn down to and explode the charges of dynamite before the blasters could do the work required of them in the manner required by the appellant and get out of the way and into a place of safety. The declaration will, of course, be construed as a whole and will not

be construed in pinched-off pieces. But regardless of this, there was no objection to the testimony on the ground that it was at variance with the allegations of the declarations and it is now too late for the appellant to complain of any variance. Jeofails, section 596, Hemingway's Code, and cases cited (section 808, Code of 1906).

The statute of jeofails cures all such defects as those above complained of by the appellant after a general verdict, and the verdict in this case is general; and if there is to be found in the record any testimony to support it, the verdict and judgment is good and cannot be reversed.

*Currie & Currie,* also, for appellee.

Appellant's brief proceeds to lay down the proposition upon which the test is to be made in these words: "As between a safe method and a dangerous method, he (master) is perfectly at liberty to choose the dangerous method." The appellee controverts this contention. The general rule, applicable to any and all masters not classed among those using highly dangerous and powerful explosives and other substances, when it comes to the question of the adoption of a method of work, is laid down in 26 Cyc., page 1155.

At the outset we find the right of the master in adopting methods of work limited to such methods as do not disregard the safety of the servant. Any method which disregards the safety of the servant cannot legally, rightfully or morally be adopted by the master. It is negligence for him to adopt a method which does disregard the safety of his servants. *Allen* v. *Burlington, etc., R. R. Co.,* 64 Iowa, 94; *Williams* v. *Spokane,* 73 Wash. 237; *Cleveland, C. & C. R. R. Co.* v. *Keary,* 3 Ohio St. 210; *Thomas* v. *Winchester,* 6 N. Y. 397; *Cameron* v. *Kenyon-Connell Commercial Co.,* 22 Mont. 312; *Merschel* v. *L. & N. R. R. Co.,* 27 Ky. L. Rep. 465; *Barmore* v. *V. & S. P. R. R. Co.,* 85 Miss. 426, 38 So. 210; *Mattson* v *Minn.*

*& N. W. R. R. Co.,* 95 Minn. 477; *Rush* v. *Spokane Falls
N. R. R. Co.,* 23 Wash. 501.

Under the authorities the same high decree of care
which one person handling and using the dangerous agen-
cy of dynamite owes to third persons the master in
handling and using dynamite in his business owes the
same high degree of care to his servant. The term "rea-
sonable care" as applied to the use of dynamite, im-
ports, of course, the highest degree of care. And the
master must exercise in this state the highest degree of
care for the safety of his servant in the adoption of his
method of the use of dynamite in his business.

The *Y. & M. V. R. R. Co.* v. *Dees,* 83 So. 613, has no
application to the case at bar, because that case was con-
trolled by the Federal Employer's Liability Act, which
is entirely different on the question of the assumption of
risk from our state statute. Our state statute abrogates
the common-law rule of the assumption of risk, and the
decision of any court based upon the common-law rule
is not applicable in this court. *Austin et al.* v. *Mobile &
O. R. R. Co.,* 99 So. 3, is not a controlling authority be-
cause it is manifest, perfectly so, that there was no neg-
ligence, and the lower court granted the defendant a per-
emptory instruction for that reason, and this court af-
firmed that action of the lower court.

In the case at bar the trial court found that there was
ample testimony, if believed by the jury, to establish neg-
ligence against the appellant in the case at bar and prop-
erly and correctly submitted the case to the jury and the
jury believed the testimony and returned a verdict for
the appellee.

*Hannah & Simrall, T. J. Wills* and *H. Cassedy Hold-
en,* in reply, for appellant.

Granting for the sake of argument that the question of
a negligent method was involved in this case. The au-
thorities cited by distinguished opposing counsel all pred-

icate liability on a plan that is "inherently defective and unnecessarily dangerous."

Where is the proof in the record that the plan in this case was inherently defective and where is the proof in the record that the plan was unnecessarily dangerous? If the record in this case had contained so much as a suggestion of such proof, it would never have escaped the keen analytical mind and the hawk-eye of the distinguished attorney who prepared the brief for the appellee.

Opposing counsel elaborately discuss the testimony that was developed with reference to some changes that were tried out sometime after this injury. Great store is laid on the fact that this testimony showed that there had been no injury since the adoption of these methods. The first answer to this proposition is that the plaintiff did not predicate his right to recover on any issue that was effected by this testimony. Another answer is that because of this fact, the whole question was not fully and elaborately developed. Still another answer is that the method had not been tried out long enough to know whether or not it was practical. But the real, just and fair answer is that the employer should not be penalized for trying to improve the method of operation from time to time as experience may suggest or warrant and particularly in the conduct of an operation that was entirely new in this section of the country and where people were trying to conserve and utilize heretofore waste products. If a master is going to be adjudged guilty of negligence every time he undertakes to advance or make a new improvement, it must necessarily result in stifling progress and development.

Argued orally by *T. C. Hannah* and *T. J. Wills,* for appellant, and *J. W. Cassidy* and *N. T. Currie,* for appellees.

Anderson, J., delivered the opinion of the court.

Appellee, Lee Williamson, brought this action in the circuit court of Forrest county against appellant, Hercules Powder Company, to recover damages for an injury received by him alleged to have been caused by the negligence of appellant, and recovered a judgment for twenty thousand dollars. From that judgment, appellant prosecutes this appeal. (Appellee and appellant will hereinafter be referred to as plaintiff and defendant, respectively.)

On the trial defendant introduced no witnesses. At the conclusion of plaintiff's evidence, the defendant moved the court to exclude the evidence and direct a verdict in its favor. This motion was overruled, and thereupon the case went to the jury on instructions granted at the request of the parties. The grounds relied on by defendant for reversal are that the court erred in refusing to direct a verdict in its favor and in granting certain instructions requested by the defendant. There was no substantial conflict in the evidence. The statement of the facts of the case are fairly and clearly set out in the brief for defendant. We therefore adopt that statement of facts, which is as follows:

The Hercules Powder Company has a large plant at Hattiesburg, Miss., for the purpose of extracting turpentine and resin from pine stumps taken from the cut-over pine lands in South Mississippi. The process by which these stumps are removed from the ground is substantially this: The Hercules Powder Company locates a camp out in the woods, and employs a number of men under a camp foreman. These men are divided up into crews of ordinarily six men. Each crew of six men is provided with two augers. These augers are about three feet long, and are propelled or driven by electric motors. There are two men to each one of these augers. With these augers, these men bore holes in the pine stumps, and, as they are boring the holes, the other two men in the

crew that are not engaged in operating these augers pack charges of dynamite in these holes in the stumps, and put dynamite caps with fuses attached to the caps in these sticks of dynamite. Once or twice a day all the men in the crew, including those who have been boring, and those who have been loading stumps, light the fuses attached to these charges of dynamite for the purpose of blowing these stumps out of the ground. The men who are engaged in boring these holes determine by the size, soundness, and the general appearance of the stumps whether they will bore one hole or two holes in the stump, and also determine whether they will bore the hole in the top of the stump or in the side of the stump. The men who are placing the charges of dynamite in the stumps also used their judgment as to the number of sticks of dynamite they will place in each stump, being guided in this respect likewise by the size, soundness, and general appearance of the stumps. If the charge of dynamite is not sufficient to blow the stump out, but blows only one side of the stump out, it is necessary to "backshoot;" that is, to bore another hole in the stump and place another charge of dynamite in it so as to blow the stump out. If the charge of dynamite bursts the stump to pieces, but does not blow it out of the ground, then it is necessary to pull it out by means of a tractor or other means to remove it. On the other hand, if the charge of dynamite that is placed in the stump is too large, it bursts the stump to pieces and blows it a good long ways. Owing to the fact that no two stumps are of the same soundness and the same texture, the quantity of dynamite that is placed in each stump is necessarily a matter that is controlled by the judgment of the men who are boring the holes and placing the charges of dynamite in the stumps. These crews of men who are boring holes and placing the charges of dynamite, as above stated, ordinarily "fire out," or "light out," at noon, and just before quitting time in the evening. They would ordinarily have three hundred or four hundred stumps bored,

charged, and ready to "light out" in the forenoon, and a like quantity in the afternoon. When they started to "light out;" that is, light the fuses that were attached to the sticks of dynamite, all the men in the crew, including those who had been boring and those who had been placing the charges of dynamite, would line up with oak ooals for torches and commence lighting fuses. They would continue to light these fuses as rapidly as possible until the first charge of dynamite exploded, when the men would all start to run for a place of safety. When the charges of dynamite that had been fired had all exploded, the men would return and start lighting again, and continue as before, until the first charge of dynamite exploded, and they would again run for safety. They would continue this process until the entire number of stumps that had been loaded with dynamite had been "fired out." As these charges of dynamite exploded, the stumps would be blown out of the ground, some of them split to pieces, and pieces of these stumps would be blown through the air a distance of four hundred, five hundred, or six hundred yards. Consequently, as the men ran out of the way, it was necessary for them to watch for pieces of flying stumps. After these stumps were dynamited in this manner, there was another crew of men known as the "cutting crew," who came along with their axes and split and chopped up the large pieces, and then another crew known as the "hauling crew" came along with trucks, loaded this wood, and hauled it in to the plant or to the railroad track where it was loaded in cars to be transported to the plant at Hattiesburg.

Lee Williamson, the appellee, the plaintiff in the court below, worked for the Hercules Powder Company for a time as a member of the hauling crew. He left the service, but later was engaged as a member of the blasting crew. On the morning of the 7th of October the plaintiff started out as a member of the blasting crew, and he and another employee bored stumps until they fired out

at noon. At noon they had some three hundred or four hundred stumps bored, and therefore they made three firings in order to shoot this number of stumps. That afternoon he continued, as in the forenoon, to bore the stumps, but, on account of the woods having been afire, they did not have such a large number to shoot at quitting time, so they "fired out" only one time that afternoon. Thus the plaintiff assisted in firing out four times on the 7th. On the 8th of October the plaintiff was again engaged in boring stumps, but he did not assist in "lighting out." While the other boys were lighting the fuses, he removed the augers, and was otherwise engaged. On the morning of the 9th the plaintiff, with the other members of the crew, went to work at 6:30 a. m., and by 8:30 a. m. they had ninety-five stumps bored and loaded. The blasting foreman directed them to "fire out." They commenced to light the fuses in the usual and ordinary manner, and, when they had fired perhaps half of the stumps, the first charge of dynamite exploded, and they started to run for safety. A large piece of stump fell on the foot of the plaintiff, breaking some bones, and otherwise seriously injuring his foot.

Plaintiff's declaration was in two counts. In substance, the negligence charged in the declaration was that the crew with whom the plaintiff worked was required to charge one hundred stumps with dynamite, and blow them up at one and the same time; that the stumps were greatly overloaded with dynamite; that the crew were instructed to increase the charge of dynamite put in the stumps without notice to the plaintiff or knowledge on his part; that fuses of only eighteen inches were used; and that good dynamite and bad dynamite were used without notice to the plaintiff or his immediate superior W. R. Eaton. The declaration was not demurred to by the defendant. The trial was had alone on the plea of the general issue.

The defendant's position is that plaintiff wholly failed either to establish, or tend to establish, any one of the

specific acts of negligence charged in the declaration, and
that, therefore, it was entitled to a directed verdict.
While the plaintiff's position is that, although the evi-
dence failed to establish, or tend to establish, any of the
specific acts of negligence set out in the declaration as a
ground for recovery, nevertheless the evidence fairly
tended to show that the method or system which the de-
fendant adopted in blowing up the stumps was unneces-
sarily dangerous and negligent, and, that, under the law,
if such system was unnecessarily dangerous, resulting in
plaintiff's injury, the defendant was liable, and whether
it was unnecessarily dangerous was a question for the
jury.  The defendant controverts that legal proposition,
and the defendant contends, furthermore, that, if mis-
taken in that view, the plaintiff did not make a case for
the jury because the declaration failed to charge that
the plaintiff received his injury as the result of an unnec-
essarily dangerous and negligent system inaugurated by
the defendant for carrying on the work.

It is true, as contended by defendant, that the plaintiff
wholly failed to prove or introduce evidence tending to
establish any specific act of negligence on the part of de-
fendant's employees (coemployees with the plaintiff) or
defendant's foreman in charge of the work, taking place
during the progress of the work which caused plaintiff's
injury.  If the plaintiff made a case for the jury, it was
on the ground that the method or system inaugurated by
defendant for carrying on the work was unnecessarily
dangerous to defendant's employees engaged in the work.

First, with reference to the soundness of the legal prop-
osition relied on by the plaintiff.  The degree of care re-
quired of persons possessing and using dangerous ex-
plosives such as dynamite is of the highest.  The utmost
caution must be used by them to the end that harm may
not come to others.  This principle is established by sev-
eral decisions of our court, and is probably the univer-
sal rule in the courts of this country.  *Barmore* v. *Rail-
way Co.*, 85 Miss. 426, 38 So. 210, 70 L. R. A. 627; 3 Ann.

Cas. 594; *McTighe, Hughey* v. *Johnson,* 114 Miss. 862, 75 So. 600; *Hamblin* v. *Gano* (Miss.), 76 So. 633; *Evans* v. *Brown* (Miss.), 106 So. 281; 11 R. C. L. p. 653, par, 3, page 662, par. 14. And, in order to protect their servants from injury the same degree of care applies to masters using highly dangerous explosives in the conduct of their business, and this high degree of care on the part of the master applies to the plan or system adopted by him for the conduct of his business. If that plan is inherently defective and unnecessarily dangerous, its adoption is an act of negligence, and entails liability on the master for the resulting injury to his servants. In other words, we hold that, in order to safeguard his servants against injury, a master handling a highly dangerous explosive in the conduct of his business must not only exercise the highest degree of care in the doing of the specific acts, which together constitute his method or plan of carrying on the business, but he must use the same degree of care in adopting such system or plan; and, if he adopts a plan or system which is unnecessarily dangerous to his servant, he is liable for any injury resulting therefrom, although such injury may not have immediately resulted from any single specific act of negligence on the part of the master or a fellow servant of the injured person. The assumption of risks doctrine has no application in such a case. Such negligence is in the same category as any other negligence of the master resulting in injury to his servant. *Jobe* v. *Spokane Gas & Fuel Co.,* 73 Wash. 1, 131 P. 235, 48 L. R. A. (N. S.) 827; *Williams* v. *Spokane,* 73 Wash. 237, 131 P. 833; 3 Labett's Master and Servant (2d Ed.), p. 2679, section 103, and page 2699, section 1017, and note.

We think there was sufficient evidence to go to the jury on the question of whether or not the system adopted by the defendant for blasting the stumps was unnecessarily, and therefore negligently, dangerous. The evidence showed, without conflict, that under the system adopted by the defendant it was utterly impossible for the de-

fendant's employees to reach a place of safety after the dynamite in the stumps began to explode. Parts of the stumps were at times thrown from four hundred to six hundred yards. When the explosions would begin, and not until then, the members of the crew under the rule laid down for their guidance by the defendant would run for safety. It was then too late to reach a place of safety. There is no dispute in the evidence as to that fact. Although it is true that there is no material conflict in the evidence, still the evidence is such that the jury might have fairly drawn therefrom an inference that defendant's method of carrying on the business was unnecessarily dangerous to its employees. Certain facts may be clearly established from which one sensible, impartial person would infer that proper care had not been used. Another person, equally sensible and equally impartial, would infer that proper care had been used, and therefore, no negligence. In this class of cases the law commits the issue of fact to the jury. The ordinary jury is supposed to be, and is usually comprised of, men of education and men of little education, or men of learning in particular lines, and men whose learning consists of only what they have seen and heard, of merchants, mechanics, farmers, and laborers. Thus constituted, they sit together consulting and applying their separate experiences in the affairs of life and from the proven facts draw their conclusions. "This average judgment thus given it is the great effort of the law to obtain. It is assumed that twelve men know more of the common affairs of life than does one man; that they can draw wiser and safer conclusions from admitted facts thus occurring than can a single judge." *Sioux City & Pacific Railway Co.* v. *Stout,* 17 Wall. 657, 21 L. Ed. page 745.

Applying these principles to the undisputed facts in this case, we think a jury might have reasonably drawn the inference from such facts that defendant's method of blasting the stumps was unnecessarily, and therefore negligently, dangerous; that, instead of the method

adopted, the defendant could have reasonably, without interfering with the efficient conduct of its business, adopted a method of warning to the blasting crew which would have given them an opportunity to get out of reach of danger before the first explosions took place.

The defendant contends, however, that no such case as that was made by the plaintiff's declaration. If such a case is alleged in the declaration, it is in there in a very vague and indefinite manner. But, taking all of the allegations and construing them all together, there is charged in a way that the system adopted by the defendant is unnecessarily dangerous to its employees. And, furthermore, the failure of the declaration to properly charge the case now relied on by the plaintiff cannot be taken advantage of for the first time in this court. The defendant should have interposed a demurrer to the declaration, and, in that manner, tested the question. Under the statute of jeofails, such defects in the declaration are cured by verdict and judgment. And, if there was a variance between the case made by the declaration and the proof, that question should have been raised by a motion to exclude the evidence on that ground. This was not done.

The judgment in this case, however, must be reversed on account of the error of the court in giving the third and fourth instructions for the plaintiff. It is not necessary to set out these instructions. They were asked for, and given, on the theory that there was evidence tending to establish the various acts of negligence specifically set out in the plaintiff's declaration, when, in fact, there was no such evidence. The jury were told in these instructions, among other things, that it was the absolute duty of the defendant to so conduct the blasting of the stumps that the plaintiff and the other members of the crew could get out of reach of danger before explosions began. It was not the absolute duty of the defendant to so protect its servants. It was only required to adopt a better method, provided the one in use was

unnecessarily dangerous to its servants, and that was the
question which should have been submitted to the jury.
And these instructions also authorize the jury to predi-
cate liability on the large number of stumps charged with
dynamite and with various other acts that were charged
in the declaration and not proven. These instructions on
the issue of liability should have been confined strictly
to the case which the evidence tended to make; namely,
that defendant's plan or system as a whole was unneces-
sarily dangerous. The jury had no true guide in the in-
structions which would enable them to render a proper
verdict in the case which the evidence tended to make.
In other words, the evidence tended to make one case,
and the instructions to the jury, in part, authorized a
verdict for the plaintiff based on an entirely different
case.

*Reversed and remanded.*