MISSISSIPPI POWER & LIGHT CO. *et al. v.* MERRITT.

(Division B. March 29, 1943. Suggestion of Error Overruled May 24, 1943.)

[12 So. (2d) 527. No. 35208.]

796

A. M. Nelson, May & Byrd, Jackson, Young & Friend, and **Green & Green**, all of Jackson, for appellant.

800

802

Barnett, Barnett, Jones & Stone, of Jackson, and **W. W. Bean**, of Little Rock, Ark., for appellee.

804

Argued orally by **Forrest B. Jackson** and **Garner Green**, for appellant, and by **Ross R. Barnett**, for appellee.

**Anderson, P. J.**, delivered the opinion of the court.

On October 3, 1941, the appellant Power Company was engaged in making an extension of its electric service at a place in Rankin County. James A. Merritt, one of its

linemen engaged in the work at the top of one of its poles, was electrocuted by a high powered wire of 8,000 volts. The appellees, his wife and two minor children, brought this action against the Power Company and Elam, its foreman, charging that his death was caused by the negligence of the company. The trial resulted in a verdict and judgment for $20,000 against both defendants, from which they prosecute this appeal.

The grounds of liability relied on were that while Merritt was doing the work the Power Company negligently failed to de-energize the high powered wire, either by turning off a switch nearby or requiring Merritt to insulate the wire with a rubber blanket.

The assignments of error worthy of consideration are only two, that the court erred in refusing the appellants' request for a directed verdict and in refusing to grant a new trial on the ground that the verdict was excessive. We will consider the two propositions in the order stated.

The following were the facts, either proven by evidence without conflict or substantial believable evidence where there was conflict: The crew engaged in the work consisted of Elam, the foreman, and the deceased Merritt, and Ammons and Sullivan, linemen. The pole on which Merritt was at work was about twenty-five feet above ground and about six or seven inches in diameter. At the top was a high powered wire carrying 8,000 volts, below that was a neutral wire, and below that another wire not dangerous to come in contact with. And in addition there was a guy wire on which Merritt had been working which was only eight or ten inches from the high powered wire. In order to climb the pole Merritt had attached to his shoes sharp spikes, and to keep him from falling while climbing, after he reached the top or while coming down he was attached to the pole by a belt—the belt encircling him and the pole. When he had completed his work and was starting down, the spike in one of his shoes slipped out of its socket, which according to the evidence sometimes happens, causing him to dangle back in his belt and involuntarily throw up one of his hands, which came

in contact with the high powered line, resulting in his death. His death could have been avoided in two ways, (1) three hundred yards away there was a switch by means of which the current in the high powered wire could have been cut off without interfering with service to any of the Power Company's patrons; (2) on the ground nearby in a truck belonging to the Power Company was a rubber blanket which could have been thrown over and insulated the high powered wire while Merritt was at work. To have used that, however, it would have been necessary for him to have a helper up the pole with him. When the accident occurred the foreman Elam was standing within a few feet of the pole and the other three linemen were standing nearby. Elam as foreman had charge of all the ways and means of doing the work and the linemen under him, including Merritt, had to obey his instructions and directions. Without having the current in the high powered wire cut off at the switch or suggesting that it be done, and without instructing Merritt to use the rubber blanket, Elam directed Merritt to climb up the pole and do the work, fully aware of the danger to him from the high powered wire. The evidence showed that Merritt was a lineman of several years experience, that he was thirty-four years of age, six feet and two inches in height and weighed 180 pounds, and was in good health, and therefore with a long life expectancy for his age. He was getting a salary of $167.50 a month with overtime. He left in addition to his wife two young children, one a little less than three years old and one two months old.

The main contention of the Power Company is that Merritt's failure to either cut off the switch or use the rubber insulation himself, was the sole proximate cause of the injury. On the other hand, it is contended that it was the duty of the foreman Elam to require that one or the other be done, which Elam failed to do. As above stated, Elam required Merritt to go up the pole and do the work without suggesting or requiring either of those precautions being taken. "It is the settled law in this state that public utility corporations in handling and

controlling the subtle and extremely dangerous agency of electricity shall be held to the highest degree of care which skill and foresight applicable to that business can obtain.'' Henry v. Mississippi Power & Light Co., 166 Miss. 827, 146 So. 857. And the duty of the master in that respect is absolute and can not be delegated to a fellow servant. Masonite Corp. v. Lochridge, 163 Miss. 364, 140 So. 223, 141 So. 758. ''If the wires carry a strong and dangerous current of electricity, so that negligence will be likely to result in serious accidents, and perhaps death, or if a harmless wire is in dangerous proximity to a high tension wire, a very high degree of care, indeed the highest that human prudence is equal to, is necessary.'' Croswell's Law of Electricity, Sec. 234, pages 205 and 206.

In considering this question it should be kept in mind that Sections 511 and 512 of the Code of 1930 abolish contributory negligence as a defense and make negligence and contributory negligence questions for the jury to determine, and that Section 513 of the Code of 1930 abolishes the doctrine of the assumption of risks. ''The risk that the servant assumes is the danger incident to the service which remains after the master has exercised reasonable care for the safety of the servant.'' Wilbe Lbr. Co. v. Calhoun, 163 Miss. 80, 140 So. 680, 682. Evidently the work Merritt was engaged in had a good deal of complication about it. Where the work is complicated ''the mere fact that a servant may happen to know as much as the master knows about the instrumentality does not relieve the master from furnishing the servant with a safe instrumentality.'' Hercules Powder Co. v. Tyrone, 155 Miss. 75, 124 So. 74, 77, 475. Standard Oil Co. v. Franks, 167 Miss. 282, 149 So. 798.

The fact that Merritt involuntarily threw up the hand that came in contact with the high powered wire is no defense. Planters' Oil Mill v. Wiley, 154 Miss. 113, 122 So. 365.

We cannot say with a sufficient degree of confidence that the verdict was too large. The record in this case,

including the instructions, shows that the case was tried on the theory that either the Power Company's alleged negligence was the sole proximate cause of the injury or the negligence of Merritt was the sole proximate cause of his injury. Therefore, the language used by the court in Avent v. Tucker, 188 Miss. 207, 194 So. 596, 602, is applicable: "In the case at bar, neither the plaintiff nor the defendant in the court below requested instructions based upon the comparative negligence statute so that the jury in this case was not required to apportion and compare the damages on account of the negligence of the parties. We have already said that Tucker was very negligent in driving rapidly without having his car under control into and upon an intersection. We have also said that the jury was authorized to find that the Avents were negligent in driving in and upon the intersection under the circumstances without looking to the south, from which Tucker came. The jury was not directed to apportion damages as to which the court could not voluntarily instruct the jury; the plaintiff was not required by law to so instruct the jury; and the defendants saw fit not to so have the jury instructed by the court. As to whether or not the defendant chose to invoke the comparative negligence statute, Section 511, Code of 1930, was a matter of strategy on the part of the defendant in the court below which they determined so that this court cannot consider the comparative negligence of the parties in determining whether or not the verdict was excessive. See Mississippi Power Co. v. Thomas, 162 Miss. 734, 140 So. 227, 84 A. L. R. 679; Alabama and V. Ry. Co. v. McGee, 117 Miss. 370, 78 So. 296; Lindsey Wagon Co v. Nix, 108 Miss. 814, 67 So. 459.''

Affirmed.

SPECIALLY CONCURRING OPINION.

Alexander, J., delivered a specially concurring opinion.

The initial duty with respect to the place and condition of work was upon the master. The high-power wire was installed and energized by the master. It was its duty

to use in its installation and maintenance a degree of care commensurate with the danger. If after requisite care had been exercised dangers yet remained such dangers would constitute a normal and anticipated risk of the work against which the servant would have to guard himself, employing his own experience and judgment as aided by the warnings and instructions of the master.

It is no part of the servant's duty to abate dangers which are the result of the master's failure to use requisite care. The master's duty to use reasonable care to make and maintain the place of work in a reasonably safe condition is non-delegable. Reasonable care with respect to an 8,000 volt wire must of course involve a degree of care which exhausts all practical means to prevent its contact with persons, particularly servants.

There were here available two means of protection: A cut-off switch which would absolutely insure against danger, and a rubber blanket, with other insulating equipment, which was at least reasonable protection. The former was primarily under the control of appellant, the latter was readily available to appellee. The failure of appellee to use these devices was unquestionably negligence but it would be contributory negligence only if there was some initial negligence to which it could contribute. The necessity for its use was occasioned by the appellant's omission to render the wire harmless by cutting off the switch. The master may not be allowed to transfer completely to the servant the duty to guard against a condition created by its own negligence. We could not, of course, lay down a fixed rule that persons engaged in maintaining high voltage wires must de-energize them whenever their linemen are engaged in proximity thereto. Such rule would be impractical and because it is so, it is true that in most occasions requisite care is fulfilled when enlightened methods of construction have been complied with. But such impracticability does not affect the rule of requisite care. It merely takes into account the fact that the duty and the extent of protective measures must be "interpreted in the light of the attendant circum-

stances.'' Supreme Instruments Corp. v. Lehr, 190 Miss. 600, 607, 199 So. 294, 1 So. (2d) 242; Winkelman v. Kansas City El. Light Co., 110 Mo. App. 184, 85 S. W. 99, 100. If conformity with the duty to exhaust every reasonable means to protect the life of the servant would have prevented the death of Merritt, it is inescapable that such omission did not merely create a condition but was negligence. There was no practical obstacle to the employment by the master of the simple means by which it could have insured the safety of its servant. The time and effort needed to disconnect the switch was comparable to that occasioned by the procurement and use of the insulating devices by the servants. To say that the negligence of Merritt resulted in his failure to utilize means for his protection involves a a principle which operates to charge the appellant with negligence in unreasonably refusing to use available precautions which would have made counter measures unnecessary. Throwing the switch would have deprived no user of current. There was no acceptable reason why the master could not and should not have guaranteed safety by so simple and available device, except the disinclination of its foreman.

The master's duty to abate threatened danger is as great as his duty not to create it. If the business involves inherent dangers which remain despite requisite care, the duty to abate the danger arises whenever practical obstacles ordinarily justifying maintenance of the dangerous condition are removed. To argue that the sole responsibility was upon the servant is to say that it was his absolute duty to protect himself against a dangerous condition unnecessarily maintained by the master.

Since there is no intimation other than that appellee's contact with the deadly wire was accidental, it becomes proper to invoke the rule that a. master is required so far as is reasonable, to anticipate that usual accidents, even negligence, may expose the servant to a hazard created by the master. Crosswell's Law of Electricity, Sec. 234; Hercules Powder Co. v. Williamson, 145 Miss. 172, 110 So. 244; Russell v. Williams, 168 Miss. 181, 150 So.

528, 151 So. 372; Solomon v. Continental Baking Co.; 172 Miss. 388, 160 So. 732; Ross v. L. & N. R. Co., 178 Miss. 69, 172 So. 752. But we do hold that it is not the servant's duty to neutralize the initial negligence of the master by assuming full responsibility for results of such negligence. As stated, it was a duty Merritt owed to himself to insulate the wires against his contact. It was not his duty to insulate the master against responsibility.

Appellants' own witnesses testified that it would have been safest to have cut off the current. Why should the master not use the safest way when there were no considerations of convenience nor necessity requiring an exception?

**Griffith, J.,** concurs.