## COLE *v.* TULLOS

No. 40232 October 15, 1956 90 So. 2d 32

*Smith, O'Hara & Smith,* Cleveland, for appellant.

*Brewer & Brewer,* Clarksdale; *Alexander, Feduccia & Alexander,* Cleveland, for appellee.

ETHRIDGE, J.

This suit was instituted by appellant John C. Cole against appellee W. T. Tullos, Jr., in the Circuit Court of the Second Judicial District of Bolivar County, for the purpose of recovering damages for injuries sustained by Cole while he was attempting to repair a cotton picker owned by Tullos. The circuit court gave a directed verdict for defendant. Hence on this appeal a well-settled rule is applicable: Upon a motion for a directed verdict or peremptory instruction, all of the facts expressly testified to and all of the inferences necessarily and logically to be deduced therefrom are to be taken as true in favor of the party against whom the motion is asked. In other words, the plaintiff's evidence must be taken in its most favorable light. Hadad v. Booth, 82 So. 2d 639 (Miss. 1956); Coker v. Five-Two Taxi Service, 211 Miss. 820, 52 So. 2d 356. The following summary of the testimony is in accord with that rule.

Plaintiff Cole is a farm equipment mechanic. He owns and operates Cole's Repair Shop near Pace, Mississippi. For a period of three months, beginning August 1, 1954, the defendant Tullos, a farmer, employed Cole to make repairs on his three combines and one cotton picker at a

salary of $100 per month. Cole continued to operate his repair shop, but under this agreement he was to give priority to making needed repairs on this farm equipment when Tullos requested him to do so. Cole was experienced in repairing cotton pickers. On October 21, 1954, Tullos advised Cole that his cotton picker needed repairing. Cole went to the farm in order to ascertain what parts were necessary, and Tullos ordered them. The next morning, October 22, Tullos came by the shop, advised Cole that the parts had come, and told him to hurry and get the repairs underway, since bad weather was coming and he needed to get the cotton picked. At that time, Tullos told Cole that he had already taken the head off the cotton picker. He did not advise Cole that, when he did this, he had not released the tension on five heavy coil springs which controlled the steel arms of the picker.

When Cole arrived at Tullos' farm, the cotton picker's head or drum, which contains the spindles and is the mechanism which removes the cotton from the cotton boll, had been placed in the doorway of a barn. The remaining frame work of the cotton picker mounted on a tractor was parked 20 to 30 feet from the barn. Tullos assigned two farm laborers to assist Cole, and urged him to rush the work. During that morning and until about 2:30 that afternoon, Cole worked on the head of the picker. He then went out to check the arms of the picker to see what he would have to remove in order to take them off and straighten them. These two arms are steel beams about four inches at one end and three inches at the other, and approximately three and one-half feet in length. They are controlled by a power lift and five big coil springs. The coil springs support the head and arms, and keep them from flying up and down with excessive force. There is a safety catch to lock the picker drum or head in a down position or an up position. The two arms control the head, by up and down movements.

In addition to plaintiff, three other experienced mechanics testified that, in repairing a cotton picker, the first thing to do is to release the tension on these five coil springs; and that this is done easily, by removing a cap screw. It takes about four minutes. If the tension is not released before removing the head, it is very dangerous to work in the area around the two steel arms. The owner's manual of instructions concerning operations of this kind of cotton picker states that the tension of the springs should be released before the drum or head is taken off. If the tension is removed from the springs, the machinery can be repaired with safety.

After Cole went out to check the arms of the cotton picker, he began to remove some of the parts which were not on the arms but which had to come off. He worked at this for an hour to an hour and a half. While removing a hydraulic cylinder, he reached up to push a pin out of it, and, when he did, the two arms of the picker, released by the heavy pressure of the five springs under them, flew up and caught his right arm, crushing it and inflicting severe, painful and permanent injuries. Cole testified that, since tension from the springs should always be removed before the head is taken off a picker, he assumed that Tullos had done that, because Tullos had removed the head before Cole arrived at the farm. Cole also said that Tullos was rushing him, he was hurrying to make the repairs, and the fact that the tension had not been released was not apparent to him before he was injured. He also said that the safety catch or locking device on the machine, in the form of a "pin", was worn on both ends and on either side, and in this condition, with the tension on the springs, the pin would be likely to slip out of the socket and let the arms fly up. Cole did not state whether he observed that the pin was worn before or after the accident.

I. F. McNeer, a mechanic, testified that he repaired Tullos' cotton picker the day after plaintiff was in-

jured, and that the small "stopper" or pin was apparently freshly broken, but that he did not examine the pin and saw nothing worn or defective about it. McNeer also said that by a brief examination of the springs Cole could have observed whether the tension was on or off. But Cole testified that Tullos was rushing him, and, in the hurry to do the work, it was not apparent to him that the tension was on the springs; and that, since the manufacturer's regulations and the generally accepted practice is to remove tension from the springs before removing the head, he assumed that defendant had done this.

With reference to the question of whether Tullos knew or should have known that the tension should be removed from the springs before taking off the head, Cole testified that Tullos had 2,000 to 3,000 acres of farming land, and had owned several cotton pickers, for several years. Asked whether Tullos knew any of the mechanical details of the cotton picker, Cole said "he should have"; that Tullos bought all of the parts for various repairs to the picker and had plenty of tools to work with; that Tullos would direct him as to what needed fixing on the picker, including straightening the arms; and that Tullos knew the arms were bent and wanted them fixed.

Appellant assigns as error the exclusion of certain evidence on his redirect examination. The court permitted him to testify that he knew Tullos had owned other cotton pickers, but the court stated that was as far as plaintiff's counsel could go into the question of Tullos' knowledge of cotton pickers. Plaintiff's counsel said that he proposed to show that Tullos knew cotton pickers and had used many of them, in several states. In the absence of the jury, Cole testified that Tullos had about four cotton pickers at one time, and did custom work picking cotton for other farmers, in Missouri, Texas and Arizona; and that Tullos personally accompanied the pickers and their operators to Missouri. The

court sustained defendant's objection to this testimony, apparently on the ground that defendant's counsel on cross examination did not go into that matter, and accordingly it was not available to plaintiff's counsel on redirect examination. However, some of the cross examination was directed to whether Tullos was familiar with the steps in repairing the machine.

The redirect examination of witnesses rests largely in the discretion of the trial court. After a witness has been cross examined, the party calling him as its witness has a right to re-examine him to explain the cross examination, the witness' expressions and his motives for using them. It is proper on redirect examination to put questions having some bearing on the case and which follow out questions put on cross examination. But it is generally ruled that on re-examination of a witness, he may not be questioned in reference to matters not inquired into on his cross examination. 58 Am. Jur., Witnesses, Sec. 562; Tucker v. Tucker, 74 Miss. 93, 19 So. 955 (1896).

 █ Because an important issue is whether the defendant knew or should have known that the tension on the springs should be released before the head is removed from the cotton picker, we think that the action of the learned trial court in sustaining defendant's objection to this testimony offered by plaintiff on redirect examination of Cole was reversible error. The cross examination of Cole contained questions directed toward showing that Tullos had no knowledge of the mechanics of cotton pickers, and certainly on redirect examination plaintiff's counsel should have been allowed to follow out these questions put on cross examination. In fact, this was vital to plaintiff's case.

 █ Moreover, the trial court erred in granting a directed verdict in favor of the defendant-appellee. Miss. Code 1942, Section 1456, provides in part: ''In all actions for personal injury to an employee, and in all ac-

tions where such injury results in death, such employee shall not be held to have assumed the risks of his employment in any case where such injury or death results in whole or in part from the negligence of the master; . . .''

Code Section 1454 states that the fact that the person injured may have been guilty of contributory negligence ''shall not bar a recovery, but damages shall be diminished by the jury in proportion to the amount of negligence attributable to the person injured . . .''

Undoubtedly the picker was in a dangerous condition to be worked on, with the head off and the tension not released. Since Tullos had the head taken off, it was for the jury to determine whether he should have told Cole that the tension had not been released, and whether his failure to apprise Cole that the tension was still on constituted negligence, which proximately caused or contributed to Cole's injury.

 ██ The appellee cites a number of cases holding that, if an employee is injured by the very thing he is employed to repair, he can not recover from the master. Waterman-Fouke Lbr. Co. v. Miles, 135 Miss. 146, 99 So. 759 (1924); Gulf, M. & N. R. R. Co. v. Brown, 143 Miss. 890, 108 So. 503 (1926); Tupelo v. Payne, 176 Miss. 245, 168 So. 283 (1936); Masonite Corp. v. Stevens, 201 Miss. 876, 30 So. 2d 77 (1947). This rule applies primarily to work which is of such nature that its progress is constantly changing the conditions affecting an increase or diminution of safety. The hazards are regarded as being the ordinary dangers and risks of the employment which are assumed by the servant when he accepts the employment. However, the employee can not properly be considered to assume any risk unknown to him, which is created wholly or partly through the master's negligence. Appellant was not injured by a defect in the machine he was to repair, but was injured, according to plaintiff's theory, because of a dangerous condition that existed,

and which would not have existed if appellee had exercised reasonable care for appellant's safety. At any rate, as against a directed verdict, it would have been a reasonable inference for the jury that the defendant knew, or ought to have known, that a cotton picker, with the head off and the tension not released, was a dangerous instrumentality, requiring that the repairer should be warned.

It is the duty of the master to warn and instruct his servants as to defects or dangers of which he knows, or ought in the exercise of reasonable care and diligence to know, and of which the servant has no knowledge, actual or constructive. 56 C. J. S., Master and Servant, Secs. 284, 286; 35 Am. Jur., Master and Servant, Secs. 145-152. Although the jury might find that plaintiff was guilty of contributory negligence, still if defendant were negligent in failing to warn plaintiff of the danger resulting from a condition which Tullos knew or should have known was dangerous, and if this were a contributory cause to plaintiff's injuries, there is a jury issue under the comparative negligence statute, Code Section 1454. Masonite v. Lochridge, 163 Miss. 364, 140 So. 223 (1932); Miss. Power & Light Co. v. Merritt, 194 Miss. 794, 12 So. 2d 527 (1943); Brooks v. DeSoto Oil Co., 100 Miss. 849, 57 So. 228 (1911). Accordingly, it was error for the trial court to grant a directed verdict to the defendant. On the record before us, the questions of whether defendant was negligent and whether his negligence was a contributing cause of plaintiff's injuries were questions of fact for the jury to decide.

Reversed and remanded.

*Roberds, P. J.,* and *Hall, Lee* and *Holmes, JJ.,* concur.