Evans v. Brown.*

[106 So. 381.    No. 25313.]

(Division B.    Dec. 14, 1925.)

1. Explosives. *Highest degree of care required in using dynamite.*

A person who uses the dangerous agency of dynamite is *held* to the exercise of the highest degree of care to prevent injuries to other persons.

2. Master and Servant. *Person using dynamite held under duty to warn employees.*

Where a person was using dynamite to blow out stumps in the right of way of a drainage canal and had other men engaged in setting up a dredging boat within the range of missiles flying from stumps being so blasted, he is under duty to see that such warning is given as will come to the notice of each of the persons engaged in such operations.

3. Master and Servant. *Negligence in carrying on dynamiting operations held for jury.*

It is error to give a peremptory instruction to find for the defendant, where the proof for the plaintiff shows that dynamiting operations were being carried on in proximity to operations in setting up a dredge boat, and that such crew working on the dredge boat were within the range of the explosion ordinarily or frequently shown to exist, and where the proof shows that some of the crew engaged in such work did not hear the warning on account of the noise in the operation of the work in

which they were engaged, although other testimony showed that some of the men so engaged did hear the warning.

*Headnotes 1.   Explosives, 25 C. J., Section 17; 2. Master and Servant, 39 C. J., Section 572; 3. Master and Servant, 39 C. J., Section 1344.

APPEAL from circuit court of Scott county.

HON. G. E. WILSON, Judge.

Action by Rosie Evans against J. E. Brown.  Judgment for defendant, and plaintiff appeals.  Reversed and remanded.

*Huff & Lee,* for appellants.

The trial court says that the facts of this case cannot be said to constitute any kind of negligence, but declares such facts wholly exonerated appellee from any blame. We submit that such cannot be the law.  All of the courts of the land have recognized the inherent danger of such explosives as dynamite and have laid down a rule for those who use such a dangerous agency, which rule requires the exercise of the highest degree of care.   This court has subscribd to such principle in *Hamblin* v. *Gano,* 76 So. 633.  See, also, 25 C. J. 192; *Kimberly* v. *Howland,* 143 N. C. 398, 55 S. E. 778, 7 L. R. A. (N. S.) 545; *Rafferty* v. *Davis,* 260 Pa. 563 and 566, 103 Atl. 951.

Since under section 504, Hemingway's Code, there is no assumption of risks where an employee is injured as a result of the negligence of his employer, either in whole or in part, it follows, as above stated, that appellee was under the same duty to Evans as he would have been to any other person.   25 C. J., pages 192, 193.   All of this danger could have been obviated if the work had been stopped for only a few minutes.   While appellee says it was not practicable to do that, yet it does appear that by the loss of only a few minutes such a tragedy could never happen.   See *Beauchamp* v. *Saginaw Min. Co.,* 50 Mich. 163, 15 N. W. 65, 45 Am. Rep. 30.   Certainly, the duty

devolved upon appellee to give the deceased sufficient warning to enable him to get to a place of cover.

This kind of case does not seem to have been passed upon by this court; evidently because Mississippi is largely an agricultural state. No mining operations are carried on within its borders and, consequently, there is very little blasting; hence, the citation of so many authorities from other states. We submit, however, that *I. C. R. R. Co.* v. *Schultz,* 39 So. 1005, is in point. In that case, a torpedo, admittedly a dangerous explosive, was placed on the railroad track after a wreck to give warning to other approaching trains; and Schultz was walking either along the track or the road nearby when a train of the appellant company ran over the torpedo, exploding it and causing an injury to him. In that case liability was affirmed.

In the present instance we have a man well experienced in the use of dangerous explosives; he is cognizant of the damage which they can work; he employs this agency about his work; knowing the danger of it, he adopts a custom of shooting it two thousand feet away from his men, indeed a wise rule and custom. But he has his men assembling his dredge boat and for some reason he failed to have the stumps near by blown out, notwithstanding the right of way had been cleared out for two or three miles. He wants to have them blown, but instead of ceasing work around the boat for a few minutes and letting his men get to a place of safety, with the consequent loss of a very short time, he sends his dynamite shooter to blow stumps as close as two hundred and forty feet to his men who are working around the boat, although he well knew that frequently parts of stumps had been thrown at least two hundred yards.

We submit that if ever a case can be stated where, as a matter of law, liability is established because of negligence *per se,* then this is such a case.

*Watkins, Watkins & Eager,* for appellee.

I.   *When the evidence neither proves or tends to prove liability on the part of a defendant, or where the facts shown in the evidence and all the inferences from those facts, make it clear that plaintiff's own negligence produced the injury, then the question is for the court alone.* McMurtry v. L., N. O. & T. R. R. Co., 67 Miss. 601; I. C. R. R. Co. v. Fowler, 123 Miss. 826, 86 So. 460.

II.   *The measure of care required of the master in the use of explosives is ordinary care.*   26 Cyc. 1112, sec. 4.

III.   *Where the conditions of the place of work are constantly changing the rule requiring the employer to make the place of work safe does not apply.*   Cybur Lumber Company v. Erkhart, 118 Miss. 401, 79 So. 235; Austin v. Mobile & O. R. Co., 134 Miss. 226, 99 So. 3; Crossett Lumber Co. v. Land, 121 Miss. 834, 84 So. 15; Tatum v. Crabtree, 130 Miss. 462, 94 So. 449.

IV.   *This was a case of pure accident.*   See Ragland v. Native Lumber Co., 117 Miss. 602, 78 So. 542; Austin v. M. & O. R. Co., 134 Miss. 226, 99 So. 3.

V.   *The degree of care required in the handling of explosives is reasonable care.*   Cary Bros. & Hannon v. Morrison, 129 Fed. 177, 180, 65 L. R. A. 659; Smith v. Day, 100 Fed. 244, 49 L. R. A. 108.

A person doing work in a public place for the benefit of the public, under legislative and municipal authority, cannot be held for negligence if the work is carefully done, although the work is dangerous in its character. Booth v. Rome, W. & O. T. R. Co., 140 N. Y. 267, 24 L. R. A. 105; Benner v. Atlantic Dredging Co., 134 N. Y. 156, 17 L. R. A. 220; Murphy v. Lowell, 128 Mass. 396, 35 Am. Rep. 381; Dodge v. Essex County, 3 Met. 380; Tiedman, Municipal Corporations, 329, and cases cited.

VI.   *The master is not obliged to use more care for the employee's safety than the employee is expected to*

*use on his own account. Bertha Zinc Company* v. *Martin,* 93 Va. 791, 70 L. R. A. 999. See, also, 3 Labatt's Master and Servant, sec. 920.

VII. *The master not guilty of negligence where appliance is in common use.* 3 Labatt's, Master and Servant, par. 939; 26 Cyc. 1097; 1102, 1107.

VIII. *The master is not an insurer of the safety of his servant.* 3 Labatt's Master and Servant, par. 919; *Howard* v. *Railroad Co.,* 50 Miss. 178; *Kenty* v. *R. R. Co.,* 77 Miss. 494; *R. R. Co.* v. *Wooley,* 77 Miss. 927; *So. R. R. Co.* v. *McClelland,* 80 Miss. 700; *Matthews* v. *R. R. Co.,* 93 Miss. 325.

IX. *The master has a right to assume that servants will use reasonable care for their own safety.* 3 Labatt's Master and Servant, par. 925.

X. *Where the dangers of a place of work arise from changing conditions with the progress of the work, the master is under no duty to provide a safe place to work. Dunn* v. *Great Lakes Dredge & Dock Co.,* 161 Mich. 551, 126 N. W. 833; *Bennett* v. *Crystal Carbonated Lime Co.,* 146 Mo. App. 565, 124 S. W. 608; *Morgan* v. *Wabash R. Co.,* 158 Ill. App. 344; 18 R. C. L., par. 96; Case note to *Citrone* v. *O'Rourke Engineering Co.,* 188 N. Y. 339, 80 N. E. 1092, 19 L. R. A. (N. S.) 340; *American Bridge Co.* v. *Seedes,* 144 Fed. 605, 75 C. C. A. 407, 11 L. R. A. (N. S.) 1041.

The positive duty of the master does not extend to making and keeping a place reasonably safe where the work is such as to make a reasonably safe place dangerous, or an obviously dangerous place safe, such as in blasting rocks, tearing down structures, and removing superincumbent masses. *Finalyson* v. *Utica Min. & Mill Co.,* 14 C. C. A. 492, 67 Fed. 507; *Gulf, C. & S. F. R. Co.* v. *Jackson,* 12 C. C. A. 507, 65 Fed. 48; *Florence & C. C. R. Co.* v. *Whipps,* 70 C. C. A. 443, 138 Fed. 13, *Mhoon-*

*Anchor Consol. Gold Mines* v. *Hopkins,* 49 C. C. A. 347, 111 Fed. 298.

XI. *The decedent had a perfectly safe method provided for the performance of his duties and voluntarily, and without necessity sought a place of danger.* *Hinton Bros. Lumber Company* v. *Polk,* 117 Miss. 300; *J. J. Newman Lumber Co.* v. *Dantzler,* 107 Miss. 31, 64 So. —; *Ovett Land & Lumber Co.* v. *Adams,* 109 Miss. 740; *Buckeye Cotton Oil Company* v. *Saffold,* 125 Miss. 407.

The proof in this case showed that the employee who was dynamiting the stumps was close enough to the boat to be heard, and before lighting the fuse, he gave the usual signal, "Fire in the hole;" that this signal was intended to notify the men to get out of the way because there would be an explosion; that a perfectly safe place was provided for them to go; that the boat was covered with a roof and all they had to do was to go under there; that the signal was evidently heard because the other men got under the roof; that the decedent evidently heard the warning because he got off the boat and went off some twenty feet, instead of remaining there in a place of safety. It is true that Mr. Brown did not hear it, but he states that he was on the back of the boat, engaged in some work which made considerable noise.

The appellee was not an insurer of the safety of the decedent, but in view of all the circumstances and facts was merely under the duty to exercise reasonable care to provide him with a safe place to work.

We submit that the case should be affirmed.

Argued orally by *Percy Lee,* for appellant, and *Wm. H. Watkins,* for appellee.

ETHRIDGE, J., delivered the opinion of the court.

The appellant brought a suit for the death of her husband, who was killed in the employ of the appellee. The appellee was a contractor engaged in cutting a drainage canal, and it had the right of way cleared for a consider-

ble distance and had brought the dredge boat machinery for the dredging operation upon the premises, and it was being set up by a crew of men in which the appellee himself was engaged, and another employee of the appellee was engaged in blasting stumps from the right of way, and the injury to the deceased was caused by a fragment of the stump being hurled through the air to a great height and falling upon the head of the deceased, crushing his skull.

The plaintiff introduced the defendant, who testified that generally he kept the dynamiting crew at a considerable distance from the dredging boat and dredging operations; that he did this because it was dangerous to the employees, because in blasting stumps sometimes the debris would be thrown a considerable distance as far as two hundred yards sometimes; that the operation of the blasting which caused the injury was two hundred fifty to four hundred fifty feet from where the deceased and other men were working on the drainage boat putting it in shape to be operated; that the person who conducted the blasting operations generally gave signals in sufficient time for the men within range of the dynamiting operations to get to a place of safety; that at the time deceased was killed he was at work on the dredge boat with other men, and he did not hear the signal given by the party doing the blasting. The defendant also testified that the deceased at some time during his employment had himself operated the blasting operation. The plaintiff offered other proof to show the relation of the deceased to her, as her husband, and that she and the children were dependent upon him for support.

The plaintiff also offered as a witness the person who conducted the blasting operation, who testified that he was a brother-in-law of the deceased, and that he put the fuse to the dynamite before lighting it, and that the fuse was of such length that it would take about two minutes before the explosion took place; that when he lighted these fuses he gave the warning, ''Fire in the hole,'' and himself sought a place of safety. He testified that he was

within about two hundred fifty feet of where the men were working on the dredge boat; that it was the rule to conduct dynamiting operations approximately two thousand feet from the dredging operations; that he placed five sticks of dynamite in the stump in question for the purpose of exploding it, and that it was customary to place from three to fifteen sticks of dynamite in the stump according to the size, character, etc., of the stump; that the dynamite would drive the stump from the ground. He further testified that the place where the men were working was a safe place to work.

When the plaintiff closed, the defendant moved to strike out the evidence and direct a verdict for the defendant, which motion was sustained. After this motion was sustained, the plaintiff requested permission to reopen the case and introduce further evidence, to which objection was interposed by the defendant, when the court stated:

"As I understand it, this is not for the purpose of introducing further testimony on the merits of the case. That has been passed upon and the jury has been discharged. I will permit the case to be reopened."

Thereupon another witness was introduced, who testified that he was standing near the deceased when the stump was blasted, and that he heard the warning and saw the missile flying through the air from one hundred to one hundred fifty feet in height, and that he sought a place of safety; that he did not see the missile strike the deceased; that so far as he knew the deceased was able to hear all right; that when he next saw the deceased he was lying on the ground unconscious and had been struck by something; that he did not know whether anybody saw deceased when he was hit or not; that there was no falling around the machinery of any of the machinery; that the only thing which fell was this root from the stump which had been blown through the air. This witness also testified that he had worked in the dredging business for a number of years for others as well as the defendant, and that the operations of all of them were

141 Miss.—23.

conducted pretty much as the defendant conducted the operations here; that sometimes it was necessary to blow out a stump in order to operate a dredge boat, and that a stump might be concealed in the ground so that in the regular operations it would not be blasted out; that it was customary to shoot stumps out with dynamite.

We have held in this state that a person using the dangerous agency of dynamite should exercise the highest degree of care so as to prevent injuries calculated to flow from the negligent handling of this strange and dangerous agency. *McTighe, etc., v. Johnson*, 114 Miss. 862, 75 So. 600; *Hamblin v. Gano* (Miss.), 76 So. 633.

The appellee contends that these cases do not apply to employees engaged in the service of persons using dynamite in such operations, that a person engaged in such service assumes the risk usual to such occupation, and that by necessity he assumes the risk of the great dangers involved in such operations.

The rule stated would apply so far as the person engaged in blasting operations is concerned, provided the master is not negligent. Our statute, section 504, Hemingway's Code (Laws of 1914, chapter 156), provides:

"In all actions for personal injury to an employee, and in all actions where such injury results in death, such employee shall not be held to have assumed the risks of his employment in any case where such injury or death results in whole or in part from the negligence of the master," with certain exceptions not applicable to the present case.

The deceased here was not engaged in such operation and was not called upon to assume the dangers attending the blasting operations if they were negligently conducted.

It is insisted by the appellee that the doctrine of a safe place to work is not applicable here because of the dangerous conditions of the work as it progressed. The injury here did not result from the operation of the work in which the deceased was engaged. The injury did not flow from the operation of the work that deceased was

engaged in, but from a separate and independent operation.

We think this case should have been submitted to the jury under proper instructions of law as to whether it was negligence in conducting the dynamiting operations within the range of other work where the safety of other employees engaged in other character of work would be endangered. The testimony introduced from one witness shows that he did not hear the warning given, and that of another witness that he did hear the warning. We think, where operations of the kind here involved are being conducted, that it was the duty of the master to see that adequate warning was given so as to attract attention of all employees engaged in putting together the dredging machinery. Where that work was being conducted with the attendant noises calculated to drown the voice of warning, it would become the duty of the master to be more cautious and give such warning as would certainly be heard by the employees operating the dredge boat.

We think therefore it was error to give the peremptory instruction. There is no positive evidence that the deceased heard the warning, or that he deliberately took the risk and ignored the warning. It may have been that he did not hear the warning, as one of the witnesses testified he did not hear it.

Whenever the evidence is in conflict on material points as to the facts, or wherever the facts are such that reasonable men might draw different conclusions from the facts, the case should be submitted to the jury. The rule as to granting peremptory instructions should be, in cases of doubt, don't.

*Reversed and remanded.*