## CONTINENTAL INS. CO. v. HARRISON COUNTY, MISS., et al.

### No. 11389.

Circuit Court of Appeals, Fifth Circuit.

Feb. 21, 1946.

---

WALLER, Circuit Judge, dissenting in part.

———◆———

S. E. Morse, of Gulfport, Miss., and Arthur A. Moreno, of New Orleans, La., for appellant.

R. W. Thompson, Jr., Webb M. Mize, and Jo Drake Arrington, all of Gulfport, Miss., and J. A. Covington, Jr., of Meridian, Miss., for appellees.

Before SIBLEY, WALLER, and LEE, Circuit Judges.

WALLER, Circuit Judge.

When the President of the Board of Supervisors of Harrison County, Mississippi, on the 23rd day of June, 1939, discovered that a portion of the bridge over the Back Bay of Biloxi was rising and falling with the tide and, as he thought, in imminent danger of falling down, he procured the Colle Towing Company to place a wooden barge under the bridge, on the deck of which cribbing was placed so as to support the falling structure. On June 29 a steel barge was also placed, and on August 12 another steel barge was substituted for the wooden barge.

These steel barges, belonging to A. G. Thomas but under charter to Colle Towing Company, were obtained on a daily rental basis of $15 per barge, and it was contem-

plated that they would be used only a few days, not to exceed two weeks.

The arrangement to secure the barges was made by Mr. Nixon, President of the Board of Supervisors, without first having any meeting of the Board, without advertising for bids, and without having passed, and spread upon its minutes, any resolution or order, such as is required by law except in cases of emergency. The President of the Board considered that the situation presented an emergency that demanded prompt action to preserve the safety of the bridge and those using it.

The barges were not released within a few days as was contemplated, but in October, 1939, they were still supporting the bridge. At the regular October meeting of the Board of Supervisors [which will hereinafter be referred to as "the Board"] it adopted the resolution which, in part, is shown in the footnote below.[1]

At this meeting Mr. Colle requested the return of the barges but was told by the

---

[1] "Whereas, heretofore due to floods and constant high tides in the Back Bay of Biloxi, the foundations of the piers which support the draw of the Back Bay Bridge across the Bay of Biloxi in Beat No. 1 in Harrison County, Mississippi, was washed out, and such supports of the draw bridge were undermined to such an extent that the draw bridge became in such condition that it could not be used for public traffic until the draw bridge was supported by barges placed thereunder, and then only for light traffic thereon. The draw bridge threatened to become a total loss by falling and sinking into the Bay in a great depth of water, all of which conditions came without previous warning and were unforeseen, and as a result of such conditions there was imminent danger of the value of the said draw bridge being immediately destroyed; and

"Whereas, under the aforesaid circumstances and conditions an imminent and pending emergency existed, which required immediate action on the part of the Board of Supervisors to save the said draw bridge structure from practical total loss to the county, and in order to avert the loss of the bridge it appeared to the Board, and the Board so determined and adjudicated, that it was imperative that barges be immediately procured to support the spans of the bridge until the same could be permanently repaired, thereby preventing a practical total loss of the bridge, which said emergency warranted and made it the duty of the Board to take immediate action to preserve and protect the said bridge from practical destruction, which situation and emergency the Board does now adjudge and declare did then and still exists; and,

"Whereas, after this Board did then so determine and adjudge such unforeseen emergency existed, it further ordered and adjudged that a contract be entered into with the Colle Towing Company, Inc., a corporation domiciled in Jackson County, Mississippi, whereby two barges were rented from the said Towing Company to be placed under the said draw bridge in order to support the same and prevent it from falling into the Bay, and the two barges so rented were placed under the said draw bridge to support the same. Before entering into said rental contract the Board sought bids from various other owners of barges, but the bid of the said Towing Company was the lowest and best bid.

"Now Therefore Be It Resolved by the Board of Supervisors of Harrison County, Mississippi, that an emergency did exist at the time the barges were procured and rented from said Towing Company for the purposes as herein set forth, and that the rental contracted to be paid by the county for the rental of such barges was a fair and reasonable rental for the said barges.

"Be It Further Resolved that the amount of the rents due for the said barges, as shown by the statement therefor on file with this Board, including the rental charge up to the 1st day of October, 1939, in the total sum of $2,054.-10 be and the same is hereby allowed and warrant ordered issued therefor payable out of the Road and Bridge Funds; and,

\* \* \* \* \* \* \*

"Whereas, the aforesaid emergency still exists, and it still remains imperative that the said draw bridge be supported by barges to prevent the said draw bridge falling into the water of the Bay, thereby causing great destruction of property of the County and cessation of all traffic across the bridge.

"Be It Further Resolved By The Board that the aforesaid rental contract so entered into between Harrison County, Mississippi, and the Colle Towing Company, Inc., for the rental of the two said barges shall continue and remain in force and effect from the said 1st day of October, 1939, at the daily rental of $30.00 for such barges until the said bridge has been repaired or until such time as this Board orders and adjudges such barges are no longer required to support and preserve such draw bridge."

Board in open session that if he took them he would take them at his own risk. He testified that he would not run the risk of taking the barges from under the bridge and assuming the responsibility for what might happen.

Instead of the County releasing the barges in five or six days, as originally contemplated, it kept them until September, 1940, meanwhile paying the daily rental of $15.00 per day for each barge.

On July 12, 1940, a new Board of Supervisors, which had taken office in January, 1940, and had continued to pay the rental on the barges on the same basis, entered into a contract with C. A. Thompson [who will be referred to hereinafter as "Thompson" or as "the Contractor"] for the repair of the bridge. In this contract, which appears to have been lawfully entered into, the County agreed to permit the Contractor to use these barges without cost to him during the demolition of the defective spans of the bridge, in that the Contractor's proposal to the County contained a stipulation that the County would, "furnish to the contractor herein, and permit the use of, the barges now retained at the bridge for the removal of the concrete spans during the demolition thereof, without cost to the contractor, except that the contractor is to furnish the motive power for handling and moving said barges, at his cost." It was understood that dynamite would be used by the Contractor in such demolition, for the contract mentions that the Contractor agreed not to use W. P. A. labor "in the handling or shooting of dynamite."

This contract also provides:

"3. It is further agreed that for the same consideration the undersigned contractor shall be responsible for all loss or damages arising out of the nature of the work aforesaid, or from the action of the elements, and unforeseen obstructions or difficulties which may be encountered in the prosecution of same, and for all risks of every description connected with the work, for faithfully completing the whole work in good and workmanlike manner according to the plans and specifications approved by the Board."

The Contractor executed a performance bond, with the United States Fidelity & Guaranty Company as surety, guaranteeing that the principal would "promptly, properly and efficiently perform said contract and * * * promptly pay all persons supplying labor and materials therefor, * * *."

When the Colle Towing Company learned that the County had agreed to let the Contractor use its barges, it again requested that the barges be redelivered to it, but this request was also refused. In February, 1940, the cribbing which had supported the bridge upon the barges had been removed by the County Engineer, but the barges remained under the bridge to catch it if it should settle further.

The Contractor, as contemplated, demolished the defective spans by the use of dynamite. The County Engineer warned the employee of the Contractor, as he was preparing to explode the last charge of dynamite, that the charge which he had prepared was too big, and that it was dangerous to use it. The employee disregarded the Engineer's advice, and set off the charge under water within twelve or fourteen feet of the barges, thereby causing serious damage to both barges. At the time of this occurrence the Contractor had finished with the barges and was no longer using either of them.

Plaintiff, as an insurer of the barges, paid the owner the damage thus caused and, as subrogee of the owner, sued the County, the Contractor, and the Surety on the latter's performance bond.

The Plaintiff contended that the County was a bailee and that the owner, in whose shoes it stood, was a bailor of the barges, and that although the County would not be liable in tort for the damage done to the barges, nevertheless, it was liable for a breach of its contract of bailment; that an emergency existed, and that a contract of bailment, in such emergency, could lawfully be made without the necessity of complying with the statutes of the State usually governing the making of ordinary contracts by the Board; that the Contractor was guilty of negligence which damaged the barges, and that either the bailor or bailee had a right to sue the Contractor in tort or under the contract between the Contractor and the County wherein the Contractor had obligated himself to be responsible for all loss or damage arising out of the work; and that since the Contractor had agreed to be responsible for all the damages, and since the Surety Company guaranteed the faithful performance of the contract, the bailee, as well as the bailor, had a right of action against the Contractor for the breach of this contract, and also against his surety.

The County defended on the ground that the contract for the lease of the barges to the County was void because: (1) There was no authority in President Nixon, of the Board of Supervisors, to rent the barges, and the arrangement between Colle and Nixon was void. (2) That the formal contract of October, 1939, was void, also, because: (a) there was no informal contract to be ratified; (b) the Board was without authority to ratify such an alleged contract; and (c) the Board could not make a nunc pro tunc order dating back to the action taken by its President. (3) That an agreement to "continue in force" a contract which was without legal force was also a nullity. (4) That even if there had been an emergency, an expenditure by the Board of over $500.00 without calling for bids would have been without authority of law. (5) That a member of the Board in an emergency cannot obligate the County for an expenditure of more than $100, and that the Board itself cannot, even in an emergency, obligate the County to pay more than $500.00 unless advertisement calling for bids has been given pursuant to the statute,[2] and unless the action of the Board is spread upon the minutes.

The County further contends that under the statute no contract for the construction or repair of roads and bridges entered into by a Board of Supervisors shall extend beyond thirty days from termination of the term of office of the members of the Board of Supervisors awarding such contract. Sec. 8330, Mississippi Code 1942. The County also contends that the claim for damage to the barges was not presented to the Board of County Supervisors for acceptance or rejection as provided by Section 2932 of the Mississippi Code of 1942. It further insists that even if the contract of bailment were valid, it was not breached by the County.

The Defendant, Thompson, contended that the contract with the County was void for the reasons set up by the County, but in addition denies the amount of damage claimed, denies any liability under the alleged contract or otherwise, for which he could be held liable, whether the suit be ex contractu or ex delicto.

The Surety asserts: (1) That the bond given was a statutory bond, and the Plaintiff had no right to sue thereon: (a) Until the claims due the obligee had first been paid; (b) until the obligee under the bond had made a final settlement and published a notice in a newspaper in the county where the work was done; and (c) unless the Plaintiff had given notice by publication in a newspaper of the pendency of his suit. (2) That the bond was not designed as security to the Plaintiff, either under the statute or under the language of the bond, and that, therefore, there was no indemnity of such claims within the coverage of the bond.

As to Harrison County, the lower Court held: (1) That there was no contract of bailment between the County and the Towing Company since the Board made no attempt to comply with the mandatory requirements of the statute prescribing publication of advertisements for competitive bids before entering into contracts on behalf of the County; that the failure to advertise for bids renders the order of the Board of October 23, 1939, a nullity. (2) That the Board was not authorized to extend or continue indefinitely in existence a contract for the rental of the barges even if the previous contract had been lawful in its inception. (3) That there was no emergency within the meaning of the statutes such as would authorize the County to enter into such a contract without advertising for bids even had the amount not exceeded $500. (4) That the law did not authorize the Board to make the rental contract it attempted to make; that Harrison County was not an express bailee, and under the law there could be no implied contract of bailment, and that the Board of Supervisors could not ratify or validate a void contract or order. (5) That the Towing Company had failed to first present its claim to the Board of Supervisors for acceptance or rejection. (6) That there was no valid contract of bailment on the part of either of the defendants and, consequently, no liability on the part of either for an alleged breach of a bailment contract. (7) That even if the contract for the rent of the barges had been valid when made, it would have expired by operation of law thirty days after the termination of the term of office of the members of the Board awarding such contract.

As to the Contractor, the Court held that the doctrine of res ipsa loquitur did not apply and that the Plaintiff had failed to meet the required burden of proof to show that the Contractor was guilty of neg-

---

[2] There was no advertisement for bids as recited in the resolution.

ligence. Moreover, the Plaintiff had brought an action in contract rather than in tort.

As to United States Fidelity & Guaranty Company, the Court held that the bond in favor of the County covering the liabilities of Thompson was not intended to cover a liability of the type sued on, and that in no event was the surety liable.

■ A majority of the Court agrees that the County is not liable in this case for the reasons: (a) That the contract for the rental of the barges was entered into in violation of the statutes of Mississippi; (b) that being void, it was not subject to ratification; (c) that since the rental contract was void, there was no valid, express contract of bailment between the owner and the County; (d) that there could be no implied contract between the owner and the County; (e) that the County is not liable in a suit in tort, either for negligence or in an action for conversion.

■ The majority also is of the opinion that the Surety is not liable in this case to the Plaintiff because: (a) The bond neither expressly nor by implication covers liability for damages to the barges; (b) the bond was not entered into for the protection of the barges nor for the benefit of their owner; (c) moreover the Plaintiff has failed to comply with Sections 5971–5976, inclusive, of the Mississippi Code Annotated 1930, Code 1942, §§ 9014–9019.

■ But we are all agreed that the lower Court was in error in holding that the Contractor was not liable in this case. He made a contract with the County to use the barges of the Plaintiff, and under that contract agreed to be responsible for all loss or damage. Implicit in this contract is the obligation to return the barges in the same condition as received, reasonable wear and tear excepted, and to be responsible to use due care for the safety of such barges. The owner of the barges [and consequently his subrogee] has the right to bring an action on that contract or to amend the complaint and allege negligence, prior to another trial, if it so desires.

■■ The evidence clearly shows that the Contractor was guilty of negligence in exploding the heavy charge of dynamite within twelve or fourteen feet of the barges, which he knew, or should have known, were so near at hand. The fact that the Contractor employed one reputed to be highly skilled in the use of dynamite does not measure his full responsibility. One who sets off a charge of dynamite in the water, within twelve or fourteen feet of a barge, of sufficient force to blow in the sides, has failed to use the care required in the circumstances. One who uses the dangerous agency of dynamite is held to the exercise of the highest degree of care to prevent injury to another. Evans v. Brown, 141 Miss. 346, 106 So. 281; Hercules Powder Company v. Williamson, 145 Miss. 172, 110 So. 244. The same rule would apply as to the property of another.

■ We also think that the doctrine of res ipsa loquitur is clearly applicable in this case.

The writer, standing alone, is of the view that the County became a lawful bailee of the barges for the following reasons: (1) The evidence shows the existence of an emergency. (2) The statute gives a member of the Board the right to expend as much as $100 in the event of an emergency. The rental of the barges was by the day at $27.50 and later at $30 per day. Mr. Nixon, therefore, had the right under the statute to lease the barges for a period of at least three days. The Board could have rented them in an emergency for eighteen days without advertising. (3) The County permissively came into the possession and custody of the barges. Being in such custody it was a bailee, charged with the usual duty of keeping the subject of the bailment safely and likewise returning it to its owner. There is not involved in this case any question as to the right of the barge owner to collect rental on the barges. That matter is not before this Court. The statutes in reference to the making of contracts for the expenditure of money by the Board of Supervisors were passed for the protection of the public revenue, and even if the County could not have been required to pay the barge rental, nevertheless, it, having gotten possession of the barges of another, had the duty of a bailee to keep safely, and return ultimately, these barges to their owner.

Moreover, it is not essential to the creation of the relation of bailor and bailee that they should enter into a contract.

"A contract inter partes is not essential to a bailment; but it is the element of lawful possession, however created, and duty to account for the thing as the property of another, that creates the bailment." Burns v. State, 145 Wis. 373, 128 N.W. 987, 140 Am.St.Rep. 1081.

Nor is it necessary that the parties be competent in order to create the bailment relation. In Volume 1, Van Zile on Bailments and Carriers, page 12, is found this language:

"As to the competency of parties to a bailment, it is a general rule that one who is competent to make a contract is competent to become a party to a bailment. Such a degree of competency, however, is not always required to create the bailment relation, for while that relation is a contract relation, there are cases where it will be held to exist between parties who are not competent to make a contract, as, for example, where the property of one comes into the possession of another by finding, the owner being an infant, a lunatic or one not legally competent to make a contract, the bailment relation would be held to exist and the possessor of the property would be held liable for the care and custody of it as a bailee and could not avoid his liability on the ground that the bailor was incompetent to enter into a contract in relation to such property. The relation would not be void but voidable. And so one incompetent to make a contract may become a bailee, and be liable as such."

See also: Woodson v. Hare, 244 Ala. 301, 13 So.2d 172; 6 Am.Jur. page 193, § 66, page 204, § 76; 13 C.J. page 244, § 10; 17 C.J.S., Contracts, §·6; Wilson v. Citizens Central Bank of Nelsonville, 56 Ohio App. 478, 11 N.E.2d 118; Armstrong v. Sisti, 242 N.Y. 440, 152 N.E. 254; Foulke v. New York Consol. R. Co., 228 N.Y. 269, 127 N.E. 237, 9 A.L.R. 1384; Spencer v. First Carolinas Joint-Stock Land Bank of Columbia, 167 S.C. 36, 165 S.E. 731; 6 Am. Jur. 209, § 86.

The County has a broad duty in the matter of building, repairing, and maintaining public roads and bridges, and I know of no law that would prevent the County from becoming a gratuitous bailee of a truck or a barge to be used in the maintenance or repair of its highways and bridges. There seems to be no law that would prevent me from tendering the use of my truck to the County free of charge or that would prevent the County from accepting the free use of such truck. The statutes limiting the Board of Supervisors in the making of contracts by requiring advertising for bids, and the like, constitute a limitation only upon such Board's power to expend the public funds, but not otherwise.

If the Board of Supervisors and the barge owner were laboring under a mistaken opinion that an emergency existed and that the Board had a right to make a contract for the lease of barges in order to save an expensive bridge from a destruction that seemed apparent, and under a mistaken view of the law the Board made a contract for the rental of barges to place under the bridge in order to save it, the fact that the law did not authorize the making of a contract to pay rental on such barges for the period of time used should not, in my opinion, change the fact that in actuality the County had the possession of the barges, nor deprive it of the power and the duty to protect those barges in any contract which it made with another for their use. Had the County been the owner of these barges there could be no doubt but that the Contractor, in his agreement to be responsible for all loss and damage, would have been responsible for the damage that was caused to these barges by his use of dynamite, and the County could have recovered against the Contractor under this obligation of the contract as well as the bonding company, which had guaranteed the faithful performance of that contract. Does the fact that the County has less than the full title to the barges absolve or prevent the County from taking precautions against damage by the Contractor to the property of which the County does have the lawful custody and the attendant duty of a bailee?

I think not. I deem the language in paragraph 3 to be sufficiently broad to cover not only the damage to property owned by the County but the damage to property loaned by the County to the Contractor, and that such language is broad enough also to support an action by the County against the Contractor under the provisions of his contract and against the surety on the bond of the Contractor, who failed to faithfully perform that provision of the contract.

I go further and say that since it was the duty of the County to have safely kept the barges in its custody, particularly when it was lending these barges to the Contractor, without authority of the owner, to be used in the dangerous operation of dynamiting, it had the right and at least the highly moral obligation to protect these barges so as to save the owner harmless from any damage thereto arising out of the use which it was according its Contractor; and since the County had such a right and

such a duty, it will be presumed to have intended to exercise that right and to have sought to discharge that duty in the making of the contract for the use of the barges and for their protection. In other words, I think that paragraph 3 of the contract between the County and Thompson was intended to cover the damages to the barges, and, as such, it was for the benefit of the owner of the barges, as well as the County. It is too well known to require the citation of authority that a third person, although not an express party to a contract, has the right to sue on a contract made for his benefit, particularly when the person making such contract fails or refuses to sue for his use and benefit.

Due to the fact that no contract of the County for the expenditure of public funds can be implied, and that the County cannot be sued in tort, I do not here hold that the Plaintiff has a right to sue the County for the recovery of the damages to the barges. I mean to hold only that the County had what I would term an insurable interest in these barges, and since it was letting a third party use the barges, of which it had custody, it had the right and the moral duty at least to require the user of these barges to be responsible for any damages that occurred to them. It should have taken proper precautions for their protection since it had the barges in its custody, whether the law commanded it so to do or not. I apply these views to the wording of the contract and interpret paragraph 3 of the contract to have intended to accomplish that which in common honesty and good morals should have been done.

The views which I have expressed in reference to the County and the Surety, however, lack the adherence of a majority of the Court and, therefore, cannot prevail.

I concur in the view of the majority that the Contractor is liable in this case.

From the foregoing, however, it follows that that part of the judgment of the lower Court dismissing the complaint as to Harrison County and as to United States Fidelity & Guaranty Company, the surety on the bond of the Contractor, is affirmed, but that part of the judgment of the lower Court dismissing the complaint as to the Contractor is reversed, and the cause is remanded for further proceedings not inconsistent with the views of the majority hereinabove expressed.

Affirmed in part and reversed and remanded in part.