# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2005-CA-02271-SCT

*LARRY GREEN*

*v.*

*ALLENDALE PLANTING COMPANY AND THE
KBH CORPORATION*

| | |
|---|---|
| DATE OF JUDGMENT: | 11/29/2005 |
| TRIAL JUDGE: | HON. LARRY O. LEWIS |
| COURT FROM WHICH APPEALED: | BOLIVAR COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | ELLIS TURNAGE |
| ATTORNEYS FOR APPELLEES: | TIMOTHY MICHAEL PEEPLES |
| | WILTON V. BYARS, III |
| | CHARLES S. HEWINS |
| | LAWRENCE D. WADE |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | AFFIRMED - 04/26/2007 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**EASLEY, JUSTICE, FOR THE COURT:**

¶1.     This case is an action for damages for personal injuries brought by Larry Green (Green) in the Circuit Court of Bolivar County against his employer, Allendale Planting Company (Allendale), and The KBH Corporation (KBH), collectively "the Defendants," for injuries he sustained while attempting to determine the cause of an unusual noise he heard while operating a mule boy, owned by his employer, Allendale, and manufactured by KBH. The Defendants filed a Motion for Summary Judgment. The trial court originally granted

summary judgment in part to both Defendants. The Defendants later filed a Motion to Reconsider. Upon review of the Motion to Reconsider, the trial court granted summary judgment in favor of both Defendants on all issues. Feeling aggrieved, Green now appeals the judgment of the Bolivar County Circuit Court to this Court.

**FACTS**

¶2.    Allendale purchased the mule boy in question from KBH approximately three to four weeks prior to Green's accident.[1] Allendale did not make any modifications to the mule boy and had not experienced any problems with it. Although it was Green's first cotton season operating the mule boy, he was an experienced farm hand. Green had operated various farm implements that could be attached to tractors such as cultivators, plows, bush hogs, disks, and grain carts. Moreover, Green had been employed at Allendale for approximately twelve years before the accident.

¶3.    On September 28, 2001, the day of the accident, Green was operating the mule boy when he heard a loud, unusual noise coming from the back of the mule. Green left the mule

---

[1] According to KBH, a mule boy is a tractor-pulled and powered farm implement manufactured by KBH designed to receive cotton from a cotton picker in the field and then transport it to 'module builders. After a cotton picker's bin is full, the cotton is dumped from the cotton picker's bin into the mule boy's basket. The mule boy 's hydraulic system lifts the basket above the module builder and tilts it into a dumping position so that the cotton can be transferred into the module builder for compacting. When the mule boy is elevated to the dumping position, there are four sets of metering chains connected with "chain slat" crossbars which are designed to allow an exact amount of cotton to be unloaded into the module builder. The metering chains rotate around what is the mule boy's lower side when raised and activated, and the cotton is deposited in a controlled manner by the tractor driver into the module builder below.

boy running and stepped down from the tractor. In order to determine the exact cause of the noise, Green knelt down in close proximity to the four metering chains. Green lost his balance. In an attempt to reestablish his balance, Green's hand came into contact with the moving chains, and he lost three fingers.

¶4. Green filed suit against Allendale alleging multiple theories of employer liability. Green later amended his original complaint to assert a product liability claim against KBH. Both Defendants filed a motion for summary judgment. The trial court originally granted summary judgment in part to both Defendants. The trial court initially found that Allendale was entitled to judgment as a matter of law on the following issues: (1) defective design and/or lack of safety guard; (2) failure to adequately supervise, instruct, and/or train; and (3) failure to warn. However, the trial court found that a genuine issue of material fact existed on the following issues: (1) failure to properly maintain, repair, and inspect the mule boy to discover hazards, and (2) failure to maintain a safe working environment. The trial court also initially found that KBH was entitled to judgment as a matter of law on the issue of failure to warn. The trial court held that Green knew of the danger associated with the moving chains and that no amount of warning would have prevented his injuries. However, the trial court found that a genuine issue of material fact existed regarding whether Green voluntarily and deliberately exposed himself to the danger posed by the moving chains.

¶5. Upon review of the motion to reconsider, the trial court found that both Allendale and KBH were entitled to judgment as a matter of law on all issues. The trial court held that Green had failed to set forth any specific facts to support his allegations that Allendale was

3

negligent. As to Green's defective design claim against KBH, the trial court concluded that there was no genuine issue of material fact regarding whether he voluntarily and deliberately exposed himself to a dangerous condition. The court further held that Green's own testimony established that his actions were deliberate and voluntary. Green voluntarily knelt down next to the moving chains, with the knowledge that they were dangerous. His actions were sufficient to indicate acceptance of the dangerous condition.

¶6.    Aggrieved by the trial court's judgment, Green timely filed notice of his appeal. Green later filed with this Court a motion for an extension of time to file his appellate brief. This Court granted the extension and explicitly stated that Green's appellate brief was due on June 21, 2006. However, both Allendale and KBH raise on appeal that the certificate of service on Green's brief reflects that he did not file his brief until June 23, 2006, two days after the deadline. Rule 31 of the Mississippi Rules of Appellate Procedure (M.R.A.P.) states:

> If an appellant fails to file the appellant's brief within the time provided by this rule or within the time extended, the appeal may be dismissed on motion of the appellee or on the Supreme Court's own motion as provided in Rule 2.

Rule 2 of the M.R.A.P. states:

> When either court, on its own motion or on motion of a party, determines that dismissal may be warranted under this Rule 2(a)(2), the **clerk of the Supreme Court *shall* give written notice to the party in default, apprising the party of the nature of the deficiency.** If the party in default fails to correct the deficiency within fourteen (14) days after the notification, the appeal shall be dismissed by the clerk of the Supreme Court.

(Emphasis added).

4

¶7. Although Green's brief was filed after the deadline, this Court never gave him notice of the alleged default. Additionally, Green's brief was filed only two days after the deadline, and according to Rule 2(a)(2) of the M.R.A.P., well within the fourteen days this Court gives a party to correct a deficiency. Therefore, this Court finds that Green's appeal is not dismissed pursuant to Rule 2 of the M.R.A.P.

## DISCUSSION

¶8. Green contends that the trial court improperly granted summary judgment in favor of Allendale Planting Company and KBH Corporation. In reviewing a trial court's ruling on a motion for summary judgment, this Court conducts a de novo review and "examines all the evidentiary matters before us, including admissions in pleadings, answers to interrogatories, depositions, and affidavits." *Price v. Purdue Pharma Co.,* 920 So. 2d 479, 483 (Miss. 2006) (citing *Aetna Cas. & Sur. Co. v. Berry,* 669 So. 2d 56, 70 (Miss. 1996), *overruled in part on other grounds*, *Owens v. Miss. Farm Bureau Cas. Ins. Co.*, 910 So.2d 1065, 1074 (Miss. 2005)). "The evidence must be viewed in the light most favorable to the party against whom the motion has been made." *Price*, 920 So. 2d at 483 (citing *Berry,* 669 So. 2d at 70). "The moving party has the burden of demonstrating that a genuine issue of material fact exists, and the non-moving party must be given the benefit of the doubt concerning the existence of a material fact." *Howard v. City of Biloxi,* 2006 Miss. App. Lexis 893, 3 (citing *City of Jackson v. Sutton*, 797 So. 2d 977, 979 (Miss. 2001)).

¶9. "Issues of fact sufficient to require a denial of a motion for summary judgment are obviously present where one party swears to one version of the matter in issue and another

5

party takes the opposite position." ***Price***, 920 So. 2d at 483 (citing ***American Legion Ladnier Post No. 42 v. Ocean Springs,*** 562 So. 2d 103, 106 (Miss. 1990)). "If any triable issues of fact exist, the  trial court's decision to grant summary judgment will be reversed." ***Price***, 920 So. 2d at 484.  Otherwise, the decision is affirmed.  ***Id***. at 483 (citing ***Miller v. Meeks***, 762 So. 2d 302, 304 (Miss. 2000)).

> **I.** **Whether the trial court erred in granting summary judgment in favor of Allendale.**

¶10.    Green contends that the trial court should not have granted Allendale's motion for summary judgment.  Green argues on appeal that there are genuine issues of material fact that should be resolved by the jury.  Contrary to Green's assertions, Allendale argues that the trial court properly dismissed Green's claims as a matter of law.  Allendale further contends that Green's negligence was the sole proximate cause of his injuries. Allendale also asserts that Green would not have sustained any injuries if he had stopped the machine and then attempted to investigate its malfunction.  By failing to do so, Green voluntary subjected himself to an open and obvious danger.

¶11.    We find that the trial court did not err in granting summary judgment in favor of Allendale because as a matter of law, Allendale did not breach its duty to provide Green with a reasonably safe work environment, fail to warn or instruct him of the dangers associated with the mule boy, or provide him with a reasonably safe work tool.

> **A.** **Duty to provide a safe work environment.**

6

¶12.   Green argues on appeal that Allendale breached its duty to provide him with a reasonably safe work environment by failing to properly maintain and repair the mule boy. This Court has previously held that "an employer owes its employees the nondelegable duty to provide its employees with a safe place to work." *Monroe County Elec. Power Ass'n v. Pace*, 461 So. 2d 739, 748 (1984). Green offers no evidence to support his claim that Allendale failed to provide him with a reasonably safe work environment. In fact, his sworn deposition testimony defeats his claim against Allendale. During his deposition, Green admitted that the mule boy was only approximately three to four weeks old. Green also acknowledged that he inspected and performed the general maintenance of lubricating the metering chains attached to the mule boy every day. Green also admits in his appellate brief that between the date of purchase and the accident, Allendale did not make any modifications to the mule boy.

¶13.   To avoid summary judgment, the non-movant must set forth specific facts that demonstrate a genuine issue of a material fact that merits trial instead of mere unsubstantiated allegations. *Richmond v. Benchmark Constr. Corp*., 692 So. 2d 60, 61 (Miss. 1997). Although Green was injured while working on his employer's premises, Allendale did not breach its duty to provide him with a reasonably safe work environment. Green's injuries were the result of his hand getting caught in the moving chains attached to the mule boy. The facts clearly indicate that Allendale was merely an employer who purchased a mule boy. There is no evidence within the record to indicate that Allendale performed any acts or omissions that created an unsafe workplace for Green. Therefore, Allendale is entitled to

7

judgment as a matter of law on this issue. The trial court's grant of summary judgment was appropriate.

## B. Duty to warn, train, or instruct of known dangers.

¶14. Green also argues that Allendale failed to warn, train, or instruct him as to the dangers associated with operating the mule boy in the non-dumping position and those dangers disclosed in the manufacturer's manual. "It is [the] duty of [the] master to warn and instruct his servants as to defects or dangers of which he knows, or in exercise of reasonable care and diligence should know, and of which the servant has no knowledge, actual or constructive." *Cole v. Tullos*, 228 Miss. 815, 90 So. 2d 32, 36 (1956). A master has no duty to warn of obvious dangers that are apparent and customary in the performance of work. *Long v. Woollard,* 249 Miss. 722, 163 So. 2d 698, 707 (1964) (citing *Long Beach v. Spooner*, 224 Miss. 246, 79 So. 2d 833, 836 (1955)). "A warning of an open and obvious danger would provide no new information to the plaintiff . . . If it's [the thing warned of ] already known to the plaintiff, then the warning serves no purpose." *Vaughn v. Ambrosino*, 883 So. 2d 1167, 1171 (Miss. 2004).

¶15. In *Vaughn*, this Court held that in failure to warn cases, the open and obvious defense is still a complete bar to recovery. *Id*. *See Mayfield v. Hairbender*, 903 So. 2d 733, 735-36 (Miss. 2005) (holding that the grant of summary judgment was appropriate because the alleged hazard was open and obvious and known to the plaintiff, prior to her injuries). In *Vaughn,* the defendant's former housekeeper brought suit, claiming that the defendant's dog ran into a ladder that the plaintiff was using, causing the plaintiff to fall and sustain serious

8

injuries. *Vaughn*, 883 So. 2d at 1168. This Court concluded that although the "plaintiff attempted to classify her case as a master/servant matter, rather than a premise liability case involving an invitee, . . . [there is no] difference in the master's duty, and that of an owner or occupier of a premises to an invitee." *Id*. at 1170. We further held that the comparative negligence standard applied to the open and obvious defense only when there was a claim of a dangerous condition and not when there was a claim for failure to warn of a dangerous condition. *Id.* at 1170.

¶16. The Court reasoned:

> Stated differently, a warning of an open and obvious danger would provide no new information to the plaintiff. Stated still another way, a thing warned of is either already known to the plaintiff, or it's not. If it's already known to the plaintiff, then the warning serves no purpose. If it is not already known to the plaintiff, then the thing warned of was not open and obvious in the first instance.

*Vaughn*, 883 So. 2d at 1170-71.

¶17. Similarly, in an older case, *Poplarville Lumber Co. v. Kirkland*, 149 Miss. 116, 115 So. 191, 192 (1928), this Court held that it was error for the trial court to submit the question of the employer's liability in not warning the employee to the jury because the warning was unnecessary. The employee in *Kirkland* was injured while performing his duties of removing the ends of a lumber cut saw.[2] *Id*. at 191. This Court concluded that the evidence demonstrated that the employee did not need a warning to understand the dangers of his

---

[2] While attempting to remove the ends, the employee stepped on the pile of ends, and slipped and struck the saw, resulting in an injury to his right hand and arm. *Kirkland*, 115 So. at 191.

9

duties. *Id*. at 192. He knew and appreciated the danger of coming into contact with the cut saw while removing the ends of the timber. *Id*. Even if the employer had instructed the employee of the danger, it would not have made a difference, because the employee already knew of the danger. *Id. See also **Yazoo & M.V.R. Co v. Downs***, 109 Miss. 140, 67 So. 962, 963 (1915).

¶18. In *Downs*, the Court held that a railroad employee, whose duties consisted of pulling out spikes holding the old rails together, which was preparatory to placing new rails on the track, was not entitled to a warning because his duties were obviously dangerous to an average workman. *Downs*, 109 Miss. 140, 67 So. at 963. The Court stated, "[f]rom the facts in evidence we believe that [the] appellant could have rightfully assumed that [the] appellee possessed such experience and judgment ordinarily found in workmen of his grade, and that he was reasonably skilled in the work he was undertaking." *Id*.

¶19. Applying the standard articulated by this Court on numerous occasions in *Vaughn*, *Mayfield*, *Kirkland*, and *Downs*, Green needed no warning to understand the danger of coming into close proximity with the moving chains attached to the mule boy. Green was an experienced farm hand and testified that he thoroughly understood the dangers associated with operating and repairing farm equipment. He operated the mule boy daily and performed the required maintenance to the machine. Thus, it is highly likely that Green had more knowledge about the mule boy than his employer.

¶20. Alternatively, even if Allendale failed to train or instruct Green on how to properly operate and repair the mule boy or failed to warn him of the danger associated with the mule

10

boy by not providing him with a copy of the owner's manual, there is no causal connection between those alleged claims and Green's injuries. The proximate cause of Green's injuries was his hand getting caught in the moving chains attached to the mule boy when he accidentally lost his balance and fell. No amount of warning, instruction, or training from Allendale would have prevented Green's injuries. Accordingly, Allendale is entitled to judgment as a matter of law on Green's failure to warn claim. The trial court's grant of summary judgment was appropriate.

### C.     Duty to provide a reasonably safe work tool.

¶21.    Lastly, Green contends that Allendale provided him with a mule boy that had a defective design because it lacked a safety guard to cover the moving chains attached to the mule boy. The Mississippi Products Liability Act (M.P.L.A.) does not provide a cause of action for defective design against an employer who merely purchased a product. Miss. Code Ann. § 11-1-63 (Rev. 2002). The statute only governs whether liability should be imposed on entities engaged in the actual production or the sale of goods. *Id.  See also Harrison v. B.F. Goodrich, Co.*, 881 So. 2d 288, 291 (Miss. Ct. App. 2004). Accordingly, Allendale is also entitled to judgment as a matter of law as it relates to this claim. The trial court's grant of summary judgment was appropriate.

### II.     Whether the trial court properly granted summary judgment in favor of KBH.

¶22.    The trial court granted summary judgment in favor of KBH, finding that KBH established a complete defense to Green's failure to warn and defective design claims

11

brought pursuant to the M.P.L.A. In ***Clark v. Brass Eagle, Inc***., 866 So. 2d 456, 460 (Miss.

2004), this Court stated:

> The Mississippi Legislature passed the Products Liability Act, Miss. Code
> Ann. § 11- 1-63, codifying strict liability law. ***Smith v. Mack Trucks, Inc***.,
> 819 So. 2d 1258, 1261 (Miss. 2002). While the procedural provisions of the
> Act became effective for all cases pending on July 1, 1993, the substantive
> provisions were not effective until July 1, 1994. ***Id***. The Act created a "hodge
> podge mixture of the consumer expectations and risk utitlity tests," for a
> manufacturer or seller to pass in order to obtain protection if the product
> causes harm. ***Id***. at 1266-67 (Smith, P.J., dissenting). Miss. Code Ann. §
> 11-1-63(a)(i-iii) provides that in order for a manufacturer or seller of a product
> to be liable, a claimant must prove by the preponderance of the evidence that
> at the time the product left the control of the manufacturer or seller:
>
>> (i) 1. The product was defective because it deviated in a material
>> way from the manufacturer's specifications or from otherwise
>> identical units manufactured to the same manufacturing
>> specifications, or
>>
>> 2. The product was defective because it failed to contain
>> adequate warnings or instructions, or
>>
>> 3. The product was designed in a defective manner, or
>>
>> 4. The product breached an express warranty or failed to
>> conform to other express factual representations upon which the
>> claimant justifiably relied in electing to use the product; and
>>
>> (ii) The defective condition rendered the product unreasonably
>> dangerous to the user or consumer; and
>>
>> (iii) The defective and unreasonably dangerous condition of the
>> product proximately caused the damages for which recovery is
>> sought.

¶23.    However, according to Green's appellate brief, he appeals to this Court only the

question of whether the trial court erred in finding that Green deliberately and voluntarily

12

exposed himself to the known danger before he accidentally fell and injured his hand. Therefore, Green presents the issue of whether there exists a genuine issue of a material fact that he assumed the risk of his injuries.

¶24.    Miss. Code Ann. § 11-1-63(d) (Rev. 2002) precludes liability for defective design when the plaintiff assumes the risk of his injuries. Sub-section (d) provides:

> In any action alleging that a product is defective pursuant to paragraph (a) of this section, the manufacturer or seller shall not be liable if the claimant (i) had knowledge of a condition of the product that was inconsistent with his safety; (ii) *appreciated the danger in the condition*; and (iii) *deliberately and voluntarily chose to expose himself to the danger* in such a manner to register assent on the continuance of the dangerous condition.

(Emphasis added).

¶25.    Assumption of the risk applies where a person freely and voluntarily chose to encounter a dangerous condition. *Elias v. New Laurel Radio Station*, 245 Miss. 170, 179, 146 So. 2d 558, 561 (1962). "Assumption of risk arises from a mental state of willingness, or a mental state approaching consent." *Id.* The Court defined the doctrine of assumed risk as follows:

> On the applicability of the doctrine of assumed risk, incurred risk, etc., 65 C. J. S., Negligence, Sec. 174, p. 849 states: "Accordingly, it has been held to be the rule, generally referred to as the doctrine of assumption of risk, and sometimes referred to as the doctrine of 'incurred risk', or 'taking the risk or hazard', or 'running the risk', that one who voluntarily exposed himself or his property to a known and appreciated danger due to the negligence of another may not recover for injuries sustained thereby, even though he was in the exercise of ordinary care or even of the utmost care. Corollaries of this rule are that to acquiesce in, or consent to, a course of negligent conduct is to assume the risks incident thereto, that *one having a choice of reasonably convenient ways assumes the risk of a dangerous one, and that one who*

13

*voluntarily attempts a rash, imprudent, and dangerous undertaking is to be presumed to have assumed the risk incidental thereto*.

"The doctrine, accordingly, can apply only where a person may reasonably elect whether or not he shall expose himself to a particular danger; and it has no application where a continued exposure to risk is due to a lack of reasonable opportunity to escape after the danger is appreciated, or is the result of influence, circumstances, or surroundings which are a real inducement to continue. Thus, if plaintiff surrendered his better judgment on an assurance of safety or a promise of protection he did not assume the risk unless the danger was so obvious and so extreme that there could be no reasonable reliance on the assurance."

No person can assume a risk that he does not know exists.

*Id.* at 178-79 (emphasis added).

¶26. Often the question of whether the plaintiff appreciated and understood the risk is a question of fact for the jury, however, "in certain circumstances the facts may show as a matter of law that the plaintiff understood and appreciated the danger." ***Herod v. Grant***, 262 So. 2d 781, 783 (Miss. 1972). "However, in the absence of evidence that the injured person knew of the danger, or that the danger was so obvious that he must be taken to have known of it, it cannot be held that he assumed the risk of injury therefrom." ***Id***. The Court held:

The elements that must be found in order to constitute a defense of assumption of risk are generally stated in some such terms as the following: (1) [k]nowledge on the part of the injured party of a condition inconsistent with his safety; (2) appreciation by the injured party of the danger in the condition; and (3) a deliberate and voluntary choice on the part of the injured party to expose his person to that danger in such a manner as to register assent on the continuance of the dangerous condition.

*Id.* at 782.

14

¶27. In *Clark*, 866 So. 2d at 461-62, this Court found that the trial court's grant of summary judgment was proper based on the deposition testimony that demonstrated that the plaintiff, Clark, was aware of and appreciated the danger associated with paintball guns, and knew that protective eyewear was readily available. Clark's deposition testimony also showed that he voluntarily chose to not wear protective eyewear when participating in shooting paintballs. This Court held:

> Based on the depositions of Clark and Rico, we find that the trial court did not err in granting summary judgment in favor of Brass Eagle. The facts do not support any other conclusion.
>
> Clark offered no proof that the paintball gun used in the incident failed to function as expected and offered no feasible design alternative which, to a reasonable probability, would have prevented what happened to him. In fact, Clark's testimony is detrimental to his claim. Clark testified that he was aware that there was protective eyewear available for purchase at Wal-Mart, but he chose not to do so. He was an active participant in shooting paintballs at other vehicles. The evening of the incident at issue here Clark and his friends in his car carried their paintball guns with them for that purpose.
>
> Clark testified that his parents were aware that he had purchased a paintball gun and engaged in shooting paintballs at other friends' cars. Clark appreciated that there was a danger in shooting at people evidenced by his statement that it was "common sense" not to shoot anyone in the face with a paintball gun. Clark said that he guessed it was "common sense" to not shoot anyone in the eye. No one playing the "game" wore protective masks or eyewear.
>
> Rico's testimony further supports the trial court's decision to grant summary judgment as to Brass Eagle. While Rico used a friend's paintball gun to shoot Clark, Rico's dad had bought a Brass Eagle Talon paintball gun for him the day of the incident. Rico chose not to read any of the warnings or instructions on the side of the gun, in the manual or on the package. Rico was familiar with the paintball gun, having used other identical paintball guns in the past. Rico stated that "paint ball wars" were played by several people by riding around shooting paintballs at each others parked or moving cars.

15

> Rico testified that he knew it was dangerous to shoot someone in the eye with a paintball gun. Rico acknowledged that he knew protective masks were available. Rico also did not use any protective eyewear. Rico stated that he knew the purpose of the protective mask was to protect the eyes and the face from paintballs.

*Id.*

¶28. In contrast to *Clark,* where the Court found the grant of summary judgment in favor of the defendant to be proper, the Court in *Pargo v. Electric Furnace Co.*, 498 So. 2d 833 (Miss. 1986), concluded the grant of summary judgment was improper because a jury question existed as whether the employee assumed the risk. *Pargo*, 498 So. 2d at 835-36. In *Pargo*, unlike the case sub judice and *Clark*, the plaintiff stated in his sworn affidavit that he was unaware of the dangerous nature of the salt bath machine and the possible consequences of having physical contact with the machine. *Id* at 834. Further, other employees testified that the employer had contemplated installing precautionary measures, but the employer decided that safety devices were not necessary. *Id*. at 834-35.

¶29. The Court held that were genuine issues of material fact as to the extent of the danger involved, whether the danger was attributable to the alleged design defect of the salt machine, and whether the employee assumed the risk of his injuries. *Id*. at 835-36. *See also Daves*, 222 So. 2d at 412-14 (The plaintiff, following his employer's instructions, drove the truck across the levee in wet conditions. When the truck became stuck, the plaintiff faced the choice of dumping his gravel load or attempt to turn around with heavy load. The truck turned over when the plaintiff attempted to dump the load in order to lighten the truck. The Court found that a jury question existed whether the plaintiff assumed the risk.).

16

¶30.    In ***Harrist v. Spencer-Harris Tool Co.***, 244 Miss. 84,89- 90, 140 So. 2d 558, 558-59

(1962), the Plaintiff fell from a ladder that he attempted to climb and sued the manufacturer

of an oil drilling rig for negligence in constructing a ladder which had the lower rungs angled

at a slant below and inside the upper rungs.  The Court applied the open and obvious rule,

stating:

> If we assume there were defects, we think they were apparent and obvious to
> a casual observer . . .
>
> No duty rests upon a manufacturer or seller to warn a purchaser of a dangerous
> design which is obvious.  If this were not true, a  manufacturer could not
> design and sell a pocket knife, axe, planer or gun.

***Id.*** at 562.

¶31.    In ***Hedgepeth v. Fruehauf Corp.***, 634 F. Supp. 93, 98-99 (S.D. Miss. 1986), the

plaintiff sued his employer, Capitol Transport Company, and Fruehauf, the manufacturer of

the tanker trailer from which the plaintiff slipped and fell.  Applying Mississippi law, the

District Court for the Southern District of Mississippi, held:

> The court is Erie-bound, however, in the absence of any sign from the
> Mississippi Supreme Court that this defense is repudiated or limited in some
> fashion, to hold that a manufacturer is under no duty to warn or adopt
> alternative designs when the danger associated with the use of a product is
> open and obvious to the user.  Plaintiff's testimony at trial unequivocally
> established that the danger of walking in oil-slick cowboy boots on a tilted,
> metal tanker surface covered with oil was open, obvious and apparent to him.
>
> . . . .
>
> Additionally, and as an alternative to the court's conclusion that judgment
> should be entered in favor of defendant on grounds that the danger was open
> and obvious to Steve Hedgepeth, the court concludes that Hedgepeth assumed
> the risk of his injury at the time he mounted the tanker top.  Under Mississippi

17

law, the defense is applicable when defendant can show the existence of three elements at the time of plaintiff's injury: (1) knowledge on the part of the injured party of a condition inconsistent with his safety; (2) appreciation by the injured party of the danger in the condition; and (3) a deliberate and voluntary choice on his part to expose his person to that danger in such a manner as to register assent to the continuance of the dangerous condition. *Macleod v. Written [McLeod v. Whitten]*, 413 So. 2d 1020, 1022 (Miss. 1982). Whether such injured party assumed a particular risk of harm is measured by a subjective standard, what the injured party actually knew, rather than the "reasonable man" standard. *Alexander v. Conveyors & Dumpers, Inc*., 731 F. 2d 1221, 1223-24 (5th Cir. 1984); *Herod v. Grant*, 262 So. 2d 781, 782 (Miss. 1972).

¶32. Here, Green admitted in his deposition testimony that he had knowledge and appreciated the dangerous condition of the mule boy. Green testified that the chains could be seen moving when the mule boy was running. In fact, he stated that "anybody could see the chains moving." The mule boy operated by a piece of metal running between four sets of chains. The tractor had to be turned on for the chains to move. Green testified that there was nothing wrong with the mule boy. In fact, he stated that the mule boy was new. Green testified that when using any piece of farm equipment, he used his common sense. Green testified that he was aware that farm equipment, especially a piece of equipment with a moving part, can be dangerous. Green testified that he was aware that the chains were moving and the tractor was running when he went to look at the mule boy.

¶33. Green takes issue with the trial court's finding that he voluntarily and deliberately approached the dangerous condition. Nothing was presented to the trial court that indicated that Green was instructed or encouraged to get near the mule boy's moving chains. When Green got off the tractor, he did not turn the mule boy off before approaching it. Green does

18

not allege that the on/off switch was defective or failed to operate. He simply failed to turn off the machine before getting near it. Green clearly testified that the tractor was still on and the chains were still moving when he approached the mule boy. Green testified that he was not trying to repair the mule boy.

¶34. Green conceded that he was aware that the machine was dangerous. Green testified in his deposition that he knew if he got too close, he would be pulled into the moving chains. Yet, he ignored the danger and approached the running mule boy. Green testified that he lost his balance when he tried to squat down; he then slipped. When he tried to keep from falling, he put out his hand to catch himself. His hand was grabbed by the machine, and he was injured.

¶35. Here, the record reveals from Green's deposition that he understood and appreciated the danger. Further, the moving chains were open and obvious to Green. Green proceeded to approach the mule boy without first turning off the machine, even though he appreciated that it was a dangerous situation. The trial court was correct in granting summary judgment in favor of KBH.

## CONCLUSION

¶36. We find that the trial court did not err in granting summary judgment in favor of Allendale Planting Company and The KBH Corporation. Therefore, the judgment of the Circuit Court of Bolivar County, Mississippi, is affirmed in toto.

¶37. **AFFIRMED.**

19

**SMITH, C.J., WALLER, P.J., CARLSON AND DICKINSON, JJ., CONCUR. RANDOLPH, J., CONCURS IN PART. GRAVES, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY DIAZ AND RANDOLPH, JJ. COBB, P.J., NOT PARTICIPATING.**

**GRAVES, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶38. I concur with the majority's finding that the trial court did not err in granting summary judgment in favor of Allendale Planting Company. However, I disagree with the majority's finding that the trial court did not err in granting summary judgment in favor of KBH Corporation. Therefore, I respectfully dissent to the majority judgment as it relates to KBH Corporation.

¶39. The majority erroneously concludes that KBH established an affirmative defense to Green's defective design claims. "Assumption of the risk is [most often] a jury question in all but the clearest of cases." *Daves v. Reed*, 222 So. 2d 411, 415 (Miss. 1969) (omitting citations). Nevertheless, the majority contends that the danger of coming in close contact with the moving chains was so obvious that the trial court could conclude as a matter of law that Green assumed the risk of his injuries, by deliberately and voluntarily exposing himself to a known danger. Green accidently fell and injured his hand. He did not voluntarily expose himself to a known danger. A jury question exists as to whether Green's injuries were the result of KBH's failure to install a safety guard to cover the metering chains.

¶40. The majority correctly asserts that Green was aware of the danger of coming in close contact with the moving chains attached to the mule boy. However, the majority erroneously concludes that Green's failure to turn off the mule boy before approaching it was an

20

indication that he voluntarily and deliberately chose to expose himself to a dangerous condition.

¶41. Although Green placed himself in close proximity to the moving chains attached to the mule boy, he did not deliberately and voluntarily choose to place his hand inside the machine. Green's hand got caught in the machine when he accidently fell. Therefore, a jury question exists as to whether Green's injuries were the result of the acts or omissions of KBH and its failure to install a safety guard to cover the metering chains. The affidavits of Green's expert, Robert T. Tolbert, and the OSHA regulations raise a fact question as to whether Green's injuries may have potentially been prevented by attaching a safety guard over the moving chains. *See also* **Lenoir v. Porter***,* 672 F.2d 1240, 1245 (5th Cir. 1980) (holding a jury question existed as to whether the employee's hand would have got caught in the machine if the limit bar had been present). Accordingly, I would reverse and remand the grant of summary judgment in favor of KBH back to the trial court for a decision on the merits.

**DIAZ AND RANDOLPH, JJ., JOIN THIS OPINION.**