# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2019-CT-01702-SCT

*HOLCOMB, DUNBAR, WATTS, BEST, MASTERS
& GOLMON, P.A. f/k/a HOLCOMB DUNBAR, P.A.*

*v.*

*400 SOUTH LAMAR OXFORD MAD HATTER
PARTNERS, LLC AND BLAKE TARTT III*

## ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 10/08/2019 |
| TRIAL JUDGE: | HON. FRANK G. VOLLOR |
| TRIAL COURT ATTORNEYS: | BRADLEY TRUETT GOLMON |
| | MICHAEL N. WATTS |
| | LEWIS CLAYTON CULPEPPER, III |
| COURT FROM WHICH APPEALED: | LAFAYETTE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | MICHAEL N. WATTS |
| | BRADLEY TRUETT GOLMON |
| ATTORNEYS FOR APPELLEES: | JOSEPH T. GETZ |
| | LEWIS CLAYTON CULPEPPER, III |
| NATURE OF THE CASE: | CIVIL - REAL PROPERTY |
| DISPOSITION: | AFFIRMED - 03/17/2022 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**ISHEE, JUSTICE, FOR THE COURT::**

¶1.     This is a landlord/tenant dispute regarding a commercial lease of an office space in

Oxford, Mississippi.  Holcomb, Dunbar, Watts, Best, Masters & Golmon, P.A. ("Holcomb

Dunbar"), was the tenant and 400 South Lamar Mad Hatter Partners, LLC ("Mad Hatter"),

was the successor landlord.

¶2.    Mad Hatter sued Holcomb Dunbar for breach of the lease due to its failure to pay rent for the remaining eighteen months of its three-year lease. Mad Hatter filed a "Complaint in Ejectment, Breach of Contract and Associated Damages" in the Lafayette County Circuit Court.  After discovery, Mad Hatter filed a motion for summary judgment, which the trial court granted.  Mad Hatter was awarded $133,900 in unpaid rent. The trial court also denied Holcomb Dunbar's motion for partial summary judgment and motion to amend its counterclaim, while granting Mad Hatter's motion to quash certain subpoenas. Holcomb Dunbar's remaining counterclaims went to trial, and the jury found against it. Holcomb Dunbar appealed the trial court's rulings on these four motions. The Court of Appeals affirmed the trial court's judgment and this Court granted certiorari.

**FACTS**

¶3.    Holcomb Dunbar entered into a nine-year commercial lease with Greenville Compress Co. in November 2009. The lease was segmented into three three-year options.  Holcomb Dunbar renewed this lease in November 2012 for an additional three-year term to last through December 31, 2015. Greenville Compress Co. sold this property to Mad Hatter. Bradley Best of Holcomb Dunbar met with the principal of Mad Hatter, Blake Tartt, in September 2015 to discuss the next lease renewal.  At this meeting, Best informed Tartt that Holcomb Dunbar was in the process of constructing a new building for its office in a nearby development called Oxford Commons. But Holcomb Dunbar was not certain the exact date it would be able to move into the new space.  Tartt then offered Best a shorter-term lease on the property at a higher rate. However, the parties ultimately agreed to renew the final three-

2

year option and Holcomb Dunbar was to move out as soon as the construction of the new building was finished. As a result, the lease was renewed in October 2015 with a December 2018 expiration term. During this meeting, Tartt told Best that he would help to find new tenants to take over. However, no provision in the lease required Mad Hatter to locate a subtenant for Holcomb Dunbar.

¶4. On August 3, 2016, Holcomb Dunbar corresponded with Tartt reminding him that it would be moving out in November 2016 and asked if it would need to find a replacement tenant, but Tartt did not respond. Holcomb Dunbar vacated the property in November 2016 and moved to Oxford Commons. In March 2017, Holcomb Dunbar gave Mad Hatter its key to the premises, and this fact was admitted by Mad Hatter in its answer. The last rental payment Holcomb Dunbar made under the lease was for April 2017. On April 11, 2017, Best secretly recorded a telephone conversation with Tartt about his progress in finding a replacement tenant for Holcomb Dunbar's remaining lease term. On June 29, 2017 and July 13, 2017, Mad Hatter sent notices of default to Holcomb Dunbar. On July 20, 2017, Best sent Tartt a notice of alleged breach of the lease that stated, "Holcomb Dunbar considers that its obligations under the lease of Suite A to be fulfilled and concluded" because Mad Hatter "breached its obligations under the lease and its duty to conduct itself in good faith and to deal fairly with the firm in numerous and repeated respects." Mad Hatter responded on July 21, 2017, by sending Holcomb Dunbar a "Three-day Notice" letter. This letter threatened a lawsuit for legal possession of the premises and past-due rent if the firm did not pay its past

due rent of $19,500 and related fees in three days. Mad Hatter claimed that it never forfeited or terminated the lease.

¶5. In September 2017, Mad Hatter then filed an "Amended Complaint in Ejectment, Breach of Contract and Associated Damages," requesting possession of the premises and damages, a writ of possession, $32,000 in past due rent and fees and accelerated rent through the end of the lease term. Holcomb Dunbar then filed an answer and counterclaim.

¶6. A trial court hearing was then held on Mad Hatter's motion for summary judgment and motion to quash and on Holcomb Dunbar's motion for partial summary judgment and motion to amend. In its summary-judgment motion, Mad Hatter claimed twenty months of rent, from May 2017 to December 2018 at $6,500 a month, plus late fees. Mad Hatter prevailed on all four motions. The trial judge, without a jury trial, determined that Holcomb Dunbar was responsible for all twenty months of unpaid rent, plus late fees, for a total of $133,900. The trial judge granted the motion to quash and held that the matters were "irrelevant to the issues pending before the Court." The Court of Appeals then affirmed the trial court's grant of Mad Hatter's motion for summary judgment. Further, the Court of Appeals affirmed the trial court's grant of Mad Hatter's motion to quash certain subpoena documents and its denial of Holcomb Dunbar's motion to amend its counterclaim.

## STANDARD OF REVIEW

¶7. A trial court's grant or denial of summary judgment is reviewed *de novo*. ***Hubbard v. Wansley***, 954 So. 2d 951, 956 (Miss. 2007). Summary judgment is proper if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the

4

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." M.R.C.P. 56(c). The evidence is viewed in the light most favorable to the nonmoving party. *Id*. "The moving party has the burden of demonstrating that [no] genuine issue of material fact exists, and the non-moving party must be given the benefit of the doubt concerning the existence of a material fact." ***One S. Inc. v. Hollowell***, 963 So. 2d 1156, 1160 (Miss. 2007) (internal quotation marks omitted) (quoting ***Green v. Allendale Planting Co.***, 954 So. 2d 1032, 1037 (Miss. 2007)). "Partial summary judgment is also permissible under our rules, utilizing the same criteria for a grant or denial of a summary judgment and the same standard of review on appeal." ***Id.*** (citing ***Brown v. Credit Ctr. Inc.***, 444 So. 2d 358, 363 (Miss. 1983); M.R.C.P. 56(d)).

¶8.     When reviewing a trial court's denial of a motion to amend a pleading, the standard of review is abuse of discretion. ***Spiers v. Oak Grove Credit***, *LLC*, 328 So. 3d 645, 650 (Miss. 2021) (citing ***Taylor Mach. Works, Inc. v. Great Am. Surplus Lines Ins. Co.***, 635 So. 2d 1357, 1362 (Miss. 1994)). A de novo standard of review is used to analyze a ruling on a motion to quash. ***Syngenta Crop Protection, Inc. v. Monsanto Co.***, 908 So. 2d 121, 124 (Miss. 2005).

### 1.     Past Due Rent Award

¶9.     Holcomb Dunbar asserts that the trial court should have granted its partial-summary-judgment motion because, under Mississippi law, if a landlord seeks possession and receives possession, it cannot also claim rent thereafter. Without giving Mad Hatter notice, Holcomb Dunbar vacated the premises in November 2016 and stopped paying rent after April 2017.

5

Mad Hatter then sent notice of default letters in June and July 2017 that cite paragraph 21 of the lease which gave Mad Hatter the option to forfeit the lease. We agree with the trial court and the Court of Appeals that the default letters did not amount to termination of the lease. Paragraph 21 of the lease merely gives Mad Hatter the option to forfeit the lease. Paragraph 21 of the lease states:

> (21) DEFAULT OF RENT, ETC.
>
> All covenants and agreements herein made and obligations assumed are to be construed also as conditions and these presents are upon the express condition that if Lessee should fail to pay when due any one of the aforesaid installments of rent, or should fail to perform or observe any of the covenants, agreements or obligations herein made or assumed by Lessee, then and thenceforth, in any of said events, this Lease *may* be forfeited and thereby become null and void *at the option of the Lessor*, and said Lessor may immediately, or any time after the breach of any said covenants, re-enter said Premises and building, or any part thereof in the name of the whole, and repossess and have the same as of Lessor's former estate and remove therefrom all goods and chattels not thereto properly belonging and expel said Lessee and all other persons who may be in possession of said Premises and building. Prior to exercising the rights as described in this provision, the Lessor shall be required to provide a written notice of default to the Lessee and a 30-day opportunity to cure all alleged deficiencies.

(Emphasis added.)

¶10.    Holcomb Dunbar argues that because Mad Hatter sought and received possession of the property, Holcomb Dunbar is not obligated to pay rent after surrendering possession of the property to Mad Hatter. According to Holcomb Dunbar, Mad Hatter could not claim rent beyond July 29, which was thirty days after Mad Hatter's demand for possession. Further, Holcomb Dunbar believes that Mad Hatter's July 21, 2017 letter in which Mad Hatter demanded legal possession of the premises; Mad Hatter's amended complaint "in Ejectment"

6

and for writ of possession; and Holcomb Dunbar's answer all indicate that Mad Hatter requested and obtained possession of the premises.

¶11. Although the parties agree that paragraph 21's terms are unambiguous, each party has a different interpretation. Mad Hatter believes that its citation of paragraph 21 simply stated it had the option to forfeit the lease. Holcomb Dunbar argues that citing paragraph 21 effectively forfeited and terminated the lease after the thirty-day cure period was up, therefore relieving Holcomb Dunbar of any further obligation to pay rent.

¶12. Holcomb Dunbar relies on *Adams v. Graham Stave & Heading Co.*, 160 Miss. 266, 135 So. 198 (1931), in which a lessor sued a lessee for failure to pay rent under a lease when payment of rent was due each year in advance. *Id.* at 198. In *Adams*, the lessor sent a demand letter to the lessee that stated that the lessee should take notice that it had forfeited the lease by not paying rent. *Id.* at 199. The lessee then accepted that letter as a release from the lease. *Id.* This Court found that the lessor in that case could not "forfeit the lease and terminate it and have the use of the premises, and receive the compensation for the rent both." *Id.* Holcomb Dunbar contends that under *Adams*, Mad Hatter could either have left Holcomb Dunbar in possession and sued for rent or terminated the lease and ousted the firm. However, the Court of Appeals found *Adams* to be distinguishable and we agree. *Id.* In *Adams*, the letter sent to the lessee affirmatively terminated the lease and the lessee then acquiesced to this termination. *Id.* Here, the letters sent to Holcomb Dunbar stated that Mad Hatter had the option of terminating the lease, since Holcomb Dunbar was not paying rent. Mad Hatter never affirmatively exercised this option and instead sought past rent due.

7

¶13. Holcomb Dunbar's argument that because Mad Hatter sued for ejectment along with its claim for damages means that it admitted that it was in possession of the property. However, just because Mad Hatter sued on multiple grounds does not relieve Holcomb Dunbar of its contractual duty to pay rent. The Mississippi Rules of Civil Procedure state that a plaintiff is allowed to sue on multiple grounds with alternative causes of action and alternative remedies. M.R.C.P. 8(a)(2). Moreover, Mad Hatter never ousted Holcomb Dunbar from the premises or affirmatively terminated the lease.

¶14. Lastly, Holcomb Dunbar's "election of remedies" affirmative defense argument was waived because it was not specifically pleaded in its answer. Holcomb Dunbar is asserts Mad Hatter is entitled to either possession or rent, not both. However, Mississippi Rule of Civil Procedure 8(c) "specifically requires that, in pleading to a preceding pleading, a party shall set forth affirmatively certain listed defenses . . . ." M.RC.P. 8(c). Therefore, "generally, if a party fails to raise an affirmative defense in its original answer, the defense will be deemed waived." *Hutzel v. City of Jackson*, 33 So. 3d 1116, 1119 (Miss. 2010) (citing *Pass Termite & Pest Control, Inc. v. Walker*, 904 So. 2d 1030, 1033 (Miss. 2004)). Neither Holcomb Dunbar's answer or counter-claim asserted election of remedies as an affirmative defense.

¶15. Therefore, we affirm the Court of Appeals' decision that Holcomb Dunbar breached the lease and was properly awarded past due rent in the amount of $133,900.

**2.      Material Breaches**

¶16.   We affirm the Court of Appeals' ruling that summary judgment was appropriate because Holcomb Dunbar's claims of material breach were either immaterial or occurred prior to the most recent lease renewal.  Holcomb Dunbar argues that there is a genuine issue of material fact regarding Mad Hatter's alleged "long train of abuses" and that, taken together, they constitute breach of the lease and excused them from any obligations for past-due rent.

¶17.   The general rule is that "all contracts contain an implied duty of good faith and fair dealing in performance and enforcement." *Cenac v. Murry*, 609 So. 2d 1257, 1272 (Miss. 1992).  Holcomb Dunbar asserts that Mad Hatter breached this duty along with specific provisions of the lease agreement.  Holcomb Dunbar further alleged that Mad Hatter "commandeered all interest in the property," while making assurances that it would "absolutely" share all of the potential leads with the firm, but it never actually shared those leads.  The record reflects that Tartt did encounter many potential leads but claimed that none of them worked out for a variety of reasons.  Holcomb Dunbar's allegation is that Mad Hatter turned down these leads on purpose to make  more money off of the property than it would have if Holcomb Dunbar would have found a subtenant.  This belief rests on the fact that Holcomb Dunbar moved out with twenty-five months left on its lease at $13 a square foot, which was below the market rate. Holcomb Dunbar claims that this meant Mad Hatter lacked incentive to assist the firm in finding a subtenant because it would be able to make more money if it found a tenant on its own.  Holcomb Dunbar also claimed that Mad Hatter could

9

"have its cake and eat it too" by not actively searching for a subtenant and continuing to make Holcomb Dunbar pay rent after it moved out.

¶18. Holcomb Dunbar relies on an unpublished opinion from Massachusetts to support the claim that Mad Hatter was obligated to refer all potential subleasees to the firm. In *Nisby v. Sheskey*, 2007 Mass. App. Div. 103, 1 (2007), a landlord sued a commercial tenant for failing to pay rent, and the tenant counterclaimed alleging that the landlord breached the lease for refusing to allow the tenant to sublet the property. The court in that case found that the landlord's conduct materially breached the lease when he refused to honor the lease provisions allowing subletting and interfered with the tenant's ability to find a subtenant. *Id.* at 3. We agree with the trial court and the Court of Appeals that *Nisby* is neither controlling nor persuasive. Unlike the landlord in *Nisby* who refused to allow the tenant to sublet the premises, Mad Hatter did not completely refuse to allow Holcomb Dunbar to sublet the premises. The record contains legitimate reasons Mad Hatter listed for its leads not working out. Further, the lease in question does not contain a provision stating that Mad Hatter is under any obligation to find a subtenant for Holcomb Dunbar, even though Mad Hatter may have offered to assist in the search. Moreover, Holcomb Dunbar itself was unable to at find a subtenant and it did not hire a broker or real-estate agent nor did it even advertise the property online.

¶19. We also agree with the Court of Appeals that Holcomb Dunbar's argument that Mad Hatter was attempting to thwart Holcomb Dunbar's effort to find a subtenant when it prevented the firm from hanging a banner on the side of the building is without merit. "[A]

10

party cannot violate the implicit duty of good faith by exercising a right made explicit in the contract." *Crosby Mem'l Hosp. v. Abdallah*, No. 01-60329, 2002 WL 31016466, at \*13 (5th Cir. 2002). The lease's paragraph 15 prohibits tenants from "any advertising purposes whatsoever" on the exterior of the premises. Further, Mad Hatter did allow Holcomb Dunbar to place a sign in the window near the firm's entrance at the rear of the building.

¶20. Holcomb Dunbar also alleged Mad Hatter breached at least four specific provisions of the lease which included quiet possession (paragraph 8), advertising (paragraph 15), subletting (paragraph 23), and parking spaces (paragraph 33). However, these incidents occurred prior to the lease term in question and were properly deemed immaterial and irrelevant. The other alleged breaches were regarding a phone call between Best and Tartt that was recorded without Tartt's knowledge. The allegations made in this recording were properly found to be immaterial and irrelevant to the duties and obligations under the lease.

¶21. Therefore, we agree that the Court of Appeals' grant of summary judgment in favor of Mad Hatter should be affirmed.

### 3. Holcomb Dunbar's Failure-to-Mitigate Argument

¶22. We affirm the Court of Appeals' finding that Holcomb Dunbar's mitigation argument was waived due to it's failure to raise this issue prior to appeal. Holcomb Dunbar did not present any authority or argument on this issue in the briefing or hearing on summary judgment to the trial court. This Court has held "that issues not raised at trial cannot be raised on appeal." *Southern v. Miss. State Hosp.*, 853 So. 2d 1212, 1215 (Miss. 2003) (citing *Parker v. Miss. Game & Fish Comm'n*, 555 So. 2d 725, 730 (Miss. 1989)). Further,

the Court of Appeals in *Stewart v. Bridge Properties, LLC*, found that a mitigation argument was procedurally barred when the defendant failed to offer authority or argument on the issue. *Stewart v. Bridge Props., LLC*, 62 So. 3d 979, 988 (Miss. Ct. App. 2010).

¶23. While Holcomb Dunbar did argue in its motion for summary judgment that Mad Hatter failed to communicate that multiple third parties showed interest in leasing the space, it did not mention mitigation. In fact, Holcomb Dunbar even admitted at oral argument that it never raised mitigation as a specific issue for the trial court to consider at the summary-judgment stage. [O]nce a party *files* a motion for summary judgment, the party opposing the motion:

> "may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." *Hartford Cas. Ins. Co. v. Halliburton Co.*, 826 So. 2d 1206, 1215 (Miss. 2001) (quoting *MST Inc. v. Miss. Chem. Corp.*, 610 So. 2d 299, 304 (Miss. 1992)).

The party against whom the motion for summary judgment is filed must show that there is a genuine issue of material fact for trial. Holcomb Dunbar never argued Mad Hatter was not entitled to judgment as a matter of law because there was a genuine issue of material fact regarding Mad Hatter's failure to mitigate.

¶24. Even if Holcomb Dunbar's mitigation argument was not procedurally barred, and it was allowed to offer evidence regarding Mad Hatter's alleged failure to mitigate, this argument would still be without merit. This is because landlords in Mississippi are not required to actively seek out tenants to mitigate damages. *Alsup v. Banks*, 68 Miss. 664, 9 So. 895, 895 (1891). The Court is not inclined to address this argument because Holcomb

12

Dunbar did not raise a mitigation argument at the trial court level. Therefore, we affirm the Court of Appeals' finding that Holcomb Dunbar's mitigation argument was waived.

### 4. Mad Hatter's Motion to Quash

¶25. We affirm the Court of Appeals' decision to grant Mad Hatter's motion to quash the firm's request for records related to a news story posted on Hotty Toddy News website in March 2017. The news story stated that Tartt filed felony mischief charges against an Oxford developer who destroyed one of his property signs that would cost between $20,000 and $25,000 to replace. Tartt and the individual in this story were developers in the Oxford Commons area. Holcomb Dunbar argues that these records would help to show how Mad Hatter materially breached the lease as well as the implied covenant of good faith and fair dealing and the express covenant of quiet enjoyment and possession. Holcomb Dunbar believes this information would indicate that the April 2017 phone call between Tartt and Best that Best secretly recorded in which Tartt threatened to arrest Best for "playing games" was more than just an idle threat because Tartt had recently had another local businessman arrested for "playing games." However, this matter is not relevant to the lease dispute at issue here. Further, the secretly recorded phone call was discussed in both Tartt's and Best's deposition, and a transcript of the entire call was entered into evidence so further context was not needed. Therefore, we find no error with the trial court's grant of Mad Hatter's motion to quash.

### 5. Holcomb Dunbar's Motion to Amend

13

¶26. The trial court did not err by denying Holcomb Dunbar's untimely motion to amend its counterclaim by adding claims of libel and libel per se against Tartt. The motion to amend was filed approximately six weeks before trial. This Court has found that motions to amend should be denied when there has been "undue delay, bad faith or dilatory motive on the part of the movant . . . ." **Webb v. Braswell**, 930 So. 2d 387, 393 (Miss. 2006) (quoting **Moeller v. Am. Guar. & Liab. Ins. Co.**, 812 So. 2d 953, 962 (Miss. 2002)). Mississippi Code Section 15-1-35 (Rev. 2019) states: "All actions for assault, assault and battery, maiming, false imprisonment, malicious arrest, or menace, and all actions for slanderous words concerning the person or title, for failure to employ, and for libels, shall be commenced within one (1) year next after the cause of such action accrued, and not after."

¶27. Not only did Holcomb Dunbar file the motion to amend extremely close to the date of trial, but also the emails on which the claims were based were barred by the statute of limitations. Holcomb Dunbar's libel claims were based on two emails that had been in Holcomb Dunbar's possession since December 12, 2017, and March 5, 2018. This was more than a year before the motion to amend was filed, so they are barred.

**CONCLUSION**

¶28. We affirm the Court of Appeals' finding that the trial court did not err by granting Mad Hatter's motion for summary judgment or by granting Mad Hatter's motion to quash certain subpoena documents. Further, we agree with the Court of Appeals that the trial court did not err by denying Holcomb Dunbar's motion to amend its counterclaim.

14

¶29. **AFFIRMED.**

**RANDOLPH, C.J., KITCHENS AND KING, P.JJ., COLEMAN, BEAM, CHAMBERLIN AND GRIFFIS, JJ., CONCUR. MAXWELL, J., NOT PARTICIPATING.**